OLD COLONY RAILROAD COMPANY *vs.* CITY OF BOSTON.

Suffolk.    January 13, 1905. — September 11, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Evidence,* Competency.    *Contract,* Validity.    *Grade Crossing.    Boston.    Interest.*

In an action of contract by a railroad company against a city, on an agreement in writing authorized by a special statute, relating to the amount of money to be paid respectively by the plaintiff and the defendant toward the abolition of certain grade crossings, evidence of the circumstances, which led to the passage of the statute and the making of the agreement under it, is competent to aid in the construction of the agreement, and evidence, offered to show that the agreement was advantageous to the plaintiff and disadvantageous to the defendant, is incompetent and immaterial.

The agreement made between the city of Boston, acting by its street commissioners, and the Old Colony Railroad Company, authorized by St. 1897, c. 519, providing that the excess of the sixty-five per cent of the expense of the abolition of certain grade crossings apportioned to the railroad company above a certain amount shall be paid by the city and not by the railroad company, in addition to fifteen per cent of the expense to be paid by the city, is valid.

Where an agreement between a railroad company and a city provides, that the city shall pay to the railroad company all the excess of expenses incurred by the railroad company above a certain sum in the abolition of certain grade crossings, "with interest at four per cent upon the payments from time to time made" by the railroad company in excess of the sum named, until the full amount due to the railroad company under the agreement is paid, the interest runs from the dates of the respective payments in excess of the sum named, and this agreement is not affected by another provision in the same contract that the amount to be paid by the city under the agreement shall be due and payable when the president of the railroad company shall notify the mayor of the city in writing that the land taken for a certain new highway has been abandoned by the railroad company and that the city may enter and take possession of it.

CONTRACT for $613,968.93, with interest, alleged to be due under a contract in writing dated June 28, 1897, signed in behalf of the plaintiff by its president, and in behalf of the defendant by its street commissioners, and approved by the mayor of the defendant. Writ dated October 2, 1903.

In the Superior Court the case was referred to James D. Colt, Esquire, as auditor. He found and reported that the defendant owed the plaintiff the sum of $613,968.93, with interest at four per cent computed to February 4, 1903, on which date the last payment was made by the railroad under decree of court, amounting to $46,672.81; and that to the above two sums interest should be added, computed on the principal sum of $613,968.93 at the rate of four per cent per annum since February 4, 1903. The method of computation is stated in the last paragraph of the opinion.

The case came on to be heard before *Sheldon*, J. upon the pleadings and the auditor's report, it being agreed that the statements of fact found in the auditor's report were true. He ruled that the agreement made between the mayor and street commissioners and the railroad company, as set forth in the auditor's report, bound the city, and excluded the evidence offered by the defendant and the plaintiff, as the same was excluded by the auditor.

The parties made the same requests for rulings by the judge as to the matter of interest that were made by them before the auditor, and he ruled with regard to interest as the auditor ruled.

He found that the plaintiff was entitled to recover the sum of

$703,226.96, being the amount found due by the auditor on the first day of January, 1904, and including interest to July 1, 1904, to which finding and ruling the defendant excepted, and the judge reported the case for determination by this court.

St. 1897, c. 519, under which the contract sued upon was made, is as follows:

"Section 1. George W. Wiggin, Charles A. Allen and Frederick W. Gillett, the commissioners heretofore appointed by the Superior Court for the county of Suffolk upon the petition of the mayor and aldermen of the city of Boston to consider the abolition of the grade crossing of Dorchester Avenue and the railroad of the Old Colony Railroad Company, leased to the New York, New Haven and Hartford Railroad Company, or any other commissioners hereafter appointed on said petition, shall, after such hearing or hearings as they may deem necessary, prescribe the details for the abolition of said crossing by relocating the part of said railroad between a point northerly of Crescent Avenue station and a point southerly of the South Boston station of said railroad and making a connection between said railroad as relocated and the railroad of the New England Railroad Company, and carrying all existing streets which shall intersect said railroad relocated as aforesaid, over said railroad, so as to avoid all crossings at grade, all substantially as shown upon a plan marked 'Plan showing Line and Profile of Proposed Change of Location N. Y., N. H. & H. R. R., Old Colony System, March, 1897', filed in said court by the attorney for said city as a part of said petition.

"Section 2. The Old Colony Railroad Company shall construct the part of the railroad so relocated and the connection aforesaid as prescribed by said commissioners, and the city of Boston shall raise the grade of all existing streets which shall cross said railroad as relocated, and carry the same by bridges over the railroad so relocated, construct such streets and bridges and carry out all other details of the abolition of said grade crossing as prescribed by said commissioners, and the cost of the work done by said railroad and of the work done by said city, and of carrying out all other details aforesaid, except as hereinafter provided, shall be paid by the Old Colony Railroad Company, the Commonwealth, and the city of Boston, in the

proportions and in the manner prescribed by the general laws for abolishing grade crossings of railroads and public ways : provided, however, that the proportion of said cost to be paid by the Commonwealth shall be twenty per cent, and the proportion to be paid by said city shall be fifteen per cent.

" Section 3. Said commissioners shall lay out a highway eighty feet in width from said Dorchester Avenue grade crossing to a point at or near the place where the new location of the railroad and the old location of the railroad meet, near the Crescent Avenue station, taking therefor lands included in said highway within said old location between said Dorchester Avenue crossing and the above-named point ; and the board of street commissioners of said city, with the approval of the mayor, may agree with the directors of said Old Colony Railroad Company upon an amount to be paid by said city to said railroad companies for land taken from, and for damages sustained by, said railroad companies under this act, taking into consideration in determining the same the benefit to the public by the carrying out of the provisions of this act, and the amount so determined shall not be included in the cost aforesaid to be paid by said railroad company, state and city, but the treasurer of said city shall on the request of the mayor issue bonds to the amount so determined, one half of the amount thereof to be issued in the year eighteen hundred and ninety-eight and the remainder in the following year, all of said bonds to be within the debt limit of said city, to run for the term of thirty years, and to be issued subject to the provisions of sections five and six of chapter four hundred and eight of the acts of the year eighteen hundred and ninety-five, so far as applicable. No report of the doings of the commissioners appointed by said court as aforesaid shall be filed in court, or shall be made by them, until such agreement is made and delivered to them, and in such case the same shall be filed with and considered as a part of their report.

" Section 4. Sections one to eight, inclusive, of chapter four hundred and twenty-eight of the acts of the year eighteen hundred and ninety, and all acts in amendment thereof or in addition thereto, shall, so far as they are applicable and not inconsistent with the provisions of this act, apply to the carry-

ing out of the provisions of this act, the award of said commissioners, and the enforcement of said agreement; and all damages suffered by any persons in their property by reason of anything done under this act may be recovered in the manner provided in said chapter for the recovery of damages caused by the taking of land for the alteration of grade crossings, and that portion of said railroad in the city of Boston shall hereafter be operated only with such motive power and in such manner as is or may hereafter be authorized and required by the general laws of the Commonwealth.

"Section 5.   This act shall take effect upon its passage."

The contract was as follows:

"Superior Court.                                          Suffolk, ss.

"In the matter of the petition of the mayor and aldermen of the city of Boston to consider the abolition of the grade crossing of Dorchester Avenue and the railroad of the Old Colony Railroad Company, pursuant to the provisions of chap. 519 of the Acts of the Legislature of Massachusetts for the year 1897, entitled 'An Act to Provide for the Abolition of the Grade Crossing of Dorchester Avenue and the Old Colony Railroad in the City of Boston.'

"It is hereby agreed between the board of street commissioners of the city of Boston, with the approval of the mayor of said city and the directors of the Old Colony Railroad Company, as follows:

"First.   The amount to be paid by the city of Boston to the Old Colony Railroad Company and the New York, New Haven and Hartford Railroad Company, lessee thereof, under the provisions of chap. 519 of the Acts of the year 1897 for land to be taken from and for damages sustained by said railroad companies under said act, by the laying out of a highway eighty feet in width from the present Dorchester Avenue grade crossing to a point at or near the place where the new location of the railroad is fixed by said act as may be prescribed by the commissioners thereunder, and the old or present location of the railroad near the Crescent Avenue station, under the provisions of sect. 3 of said act, shall be a sum equal to the difference between three hundred and seventy-five thousand dollars and

a sum which shall equal the entire amount that the Old Colony Railroad Company may be required to pay as its sixty-five per cent of the cost of making the alterations and improvement which may be prescribed by the commissioners under the first and second sections of the act, with interest at four per cent upon the payments from time to time made by said railroad company as its sixty-five per cent, in excess of said sum of three hundred seventy-five thousand dollars, until the amount to be paid under this agreement is paid.

"Second. The amount to be paid under this agreement by the city of Boston to the railroad companies shall be due and payable whenever the president of the Old Colony Railroad Company shall notify the mayor of the city of Boston in writing that the land taken for the laying out of the new highway above specified is abandoned by the railroad companies, and that the city of Boston may enter thereon and take possession thereof: Provided however, that not exceeding one-half of said amount shall be payable in the year 1898, and that said city may make payments on account of such amount at any time.

"In witness whereof the Old Colony Railroad Company has hereto set its corporate name and seal by Charles F. Choate, its president, thereto duly authorized, and the city of Boston has hereto set its corporate name and seal by its street commissioners, as authorized by said act, and the mayor of Boston has hereto set his name in approval of this agreement, this 28th day of June, A. D. 1897.

[Seal.] " Old Colony Railroad Co.
    by Charles F. Choate, President.
   City of Boston
    by John P. Dore,
     John H. Duane,
     George H. Innis, its Street Commissioners.
" Approved:
  Josiah Quincy, Mayor."

*J. H. Benton, Jr.*, for the plaintiff.

*T. M. Babson*, for the defendant.

MORTON, J. The main question in this case is whether the agreement entered into with the plaintiff by the defendant through its street commissioners with the approval of the mayor

and on which this action is brought is valid. There also are questions of interest and of the admission and exclusion of evidence. The questions of evidence may be disposed of shortly with the remark that the circumstances which led to the passage of the statute and the making of the agreement in suit under it were competent and were rightly admitted to aid in the construction of the agreement, and evidence to show that the agreement was advantageous to the plaintiff and disadvantageous to the defendant was incompetent and immaterial and was rightly excluded. We see no error on the part of the auditor or of the judge in dealing with matters of evidence.

We come then to the main question and it seems to us plain that the agreement is valid. The mayor and aldermen of the defendant filed a petition in 1892 under the grade crossing act for the abolition of the grade crossing of the Old Colony Railroad Company and Dorchester Avenue. Commissioners were appointed and hearings were had with the result that the public authorities came to the conclusion that the public benefit would be promoted by and required improvements of greater scope than those contemplated by the abolition of the single crossing to which the petition related. A plan was agreed upon which was satisfactory to the Commonwealth and the city and to which the plaintiff made no objection from an engineering point of view. This plan contemplated extending a number of streets across the location of the railroad and changing the existing location for another and laying out a street or boulevard along so much of the old location as the railroad would thus cease to occupy. The railroad company objected to this plan on account of the expense to which it would thereby be subjected, and refused to consent unless some arrangement was made so that the net expense to it should not exceed the expense to which it would be put by abolishing the Dorchester Avenue crossing, which was estimated at $375,000. As the law then stood the proposed improvements could not be carried out without the consent of the railroad company. The mayor of the defendant thereupon proposed to the railroad company, in substance, that if it would agree to the plan and would also agree that the commissioners might go on under the proceedings then pending and make the changes required by the proposed plan the city would

pay to the railroad company the difference between its share of the estimated cost of abolishing the Dorchester Avenue crossing, $375,000, and the cost of making the changes and abolishing the crossing in the manner desired by the city.  The railroad company agreed to this proposition and thereupon the city was allowed, with the assent of the railroad company, to amend its petition so as to ask for the abolition of the crossing in accordance with the plan thus agreed upon.  St. 1897, c. 519, was then passed by the Legislature and the agreement in suit was entered into under the authority which was supposed to be conferred by that statute on the city, and which we think it is plain was conferred.  It is expressly provided in § 3 of that act that "the board of street commissioners of said city, with the approval of the mayor, may agree with the directors of said Old Colony Railroad Company upon an amount to be paid by said city to said railroad companies (i. e. the Old Colony and the New York, New Haven and Hartford Railroad Companies) for land taken from, and for damages sustained by, said railroad companies under this act, taking into consideration in determining the same the benefit to the public by the carrying out of the provisions of this act, and the amount so determined shall not be included in the cost aforesaid to be paid by said railroad company, state and city."  It is objected that the amount is not fixed by the agreement.  But there is nothing in the statute which requires that it should be.  That is certain which can be made certain, and it is plain that the amount could be ascertained by deducting, from the total amount which the plaintiff was obliged to pay as its share of the improvement, the sum of $375,000, which was agreed upon as its share of the estimated cost of abolishing the Dorchester Avenue crossing.  It also is objected that unless the amount was fixed in the agreement the city might exceed its debt limit.  But that was a matter within the control of the defendant and for which the plaintiff cannot be held liable.

The remaining question relates to interest.  The agreement provides that the city shall pay the plaintiff the sum agreed upon "with interest at four per cent upon the payments from time to time made by said railroad company as its sixty-five per cent, in excess of said sum of three hundred seventy-five thou-

sand dollars, until the amount to be paid under this agreement is paid." This clearly fixes the rate of interest and provides expressly for the payment of interest until the amount to be paid by the city under the agreement shall have been paid. The fact that the plaintiff could not call upon the city for payment until its president gave notice to the mayor that the land comprised in the old location had been abandoned and that the city might enter and take possession thereof would not prevent the running of interest as agreed. The auditor computed the interest by adding together the interest at four per cent on each item of expenditure by the railroad company, including payments to the city, after the expenditures reached the sum of $375,000 down to February 4, 1903, which was the date of the last payment made by the railroad company under decree of court, and subtracting from the total, interest on all sums received by the company from the Commonwealth, and then computing interest from February 4 on the principal sum. This method was adopted and confirmed by the judge of the Superior Court who heard the case and was, we think, correct. The result is that the finding of the Superior Court is affirmed and

*Judgment ordered accordingly.*