**PENNSYLVANIA GLASS SAND CORPO-RATION OF OKLAHOMA, a Corpo-ration, Plaintiff in Error,**

v.

**Ruth OZMENT, Defendant in Error.**

**No. 40728.**

Supreme Court of Oklahoma.

Sept. 26, 1967.

Rehearing Denied Nov. 21, 1967.

Kerr, Lambert, Roberts & Lewis, by Vernon Roberts, Ada, for plaintiff in error.

J. E. Bullard, Tishomingo, John Steele Batson, Marietta, for defendant in error.

PER CURIAM:

In this appeal, brought by the defendant below from an adverse judgment for damages occasioned by the pollution of water, the parties will be called by their designation in the trial court.

Plaintiff alleged that during the years of 1959, 1960, and 1961, she was in possession as lessee of certain grazing and agricultural lands located in Johnston County, Oklahoma; during that period of time she was the owner of a number of cattle which used this land as a pasture; located upon this land was a farm pond which furnished water for the cattle; defendant owned and operated a glass sand producing and processing factory near the lands which plaintiff leased; the factory contained various types of machinery requiring large quantities of grease and oil for fuel and lubrication; the factory was on higher ground than plaintiff's leased premises and the natural drainage flowed from the plant across the leased land and into the pond where the cattle watered; defendant either intentionally or negligently dumped oil, grease and other deleterious substances into the drainage which caused sickness and death among the cattle that drank the water and ate the grass so contaminated; the actions of defendant in negligently, carelessly and wantonly polluting the water course and drainage area of the leased premises and in injuring and killing the cattle were done recklessly, wilfully, knowingly, oppressively, maliciously and without regard to the rights of plaintiff who also sought an award of exemplary damages.

Defendant answered by specifically denying that it either negligently or intentionally contaminated the premises leased by plaintiff by dumping or releasing used oil, grease or other deleterious substances into any creek, water course, drain or drainage area.

The jury returned a verdict for plaintiff and defendant appeals from a judgment entered thereon.

Defendant submits for reversal five propositions of error.

In its first and second propositions defendant argues that the trial court erred as a matter of law in failing to direct a verdict for the defendant because plaintiff's claim was barred by a contractual agreement, and that the trial court improperly refused to

give an instruction to the effect that defendant's mining lease granted to it a preemptive right to the use of the surface of the leased premises.

These propositions rest on the fact that the pond here in question was located upon premises subject to a mining lease held by defendant. Under that lease defendant had the right to extract sand. There is nothing in the mining lease which gives the defendant the exclusive right to the possession of the premises or prevents plaintiff's normal use of the surface for cattle and grazing operations.

 Defendant relies on a number of cases dealing with oil and gas leases. Matters of pollution from an oil or gas well are governed by 52 O.S.1961, § 296. The statute relating to the drilling of oil and gas wells has no application to other operations. In Johnson Oil and Refining Co. v. Carnes, 174 Okl. 599, 51 P.2d 811, this court dealt with a suit against a refinery. There it was noted that a refinery was not under a statutory duty to "immediately burn or transport from the premises" its waste and other substances. Its duty was confined to that imposed by the common law; i. e., to so handle and dispose of its waste substances as not to cause injury to others, or to use proper care to the accomplishment of that end. This statement of the common law rule which governs the standard of care to be exercised in the disposal of waste matters to prevent pollution defines the duty this defendant bore towards the plaintiff.

 The evidence here indicates that although the farm pond was situated on land subject to defendant's mining lease, defendant had not, in fact, used these premises for sand mining. There is evidence that a slush pit could have easily contained the waste oil dumped from the factory. Moreover, the use of the pasture and pond as a dumping ground for waste oil cannot be deemed as incidental to, or reasonably necessary for, the mining activity contemplated by defendant's lease.

The provisions of the original mining lease, or of the supplemental agreement subsequently executed by the parties, cannot be construed as granting to the defendant, either expressly or inferentially, an easement to flow pollutive substances onto the demised land. This case is distinguishable from Stanolind Oil & Gas Co. v. Phillips, 195 Okl. 377, 157 P.2d 751. The defendant in that case had settled with the landowner for damages done, or to be done, to the land or crops and had obtained an easement to flow pollutive substances onto the demised land. There existed a valid contract with the landowner which covered all damages occasioned, or to be occasioned to the land or crops by specified sources of harm. The agricultural lessee thus had constructive notice of the easement. He could not acquire a right which had been terminated by the landlord's contract. The agreements in this case do not contain exculpatory clauses broad enough to extinguish plaintiff's right to enjoy her possession of the surface free from defendant's invasion by pollutive substances.

 There is a marked distinction between pollution occurring in the act contemplated by the lease—namely, the production of oil—and pollution which is utterly unrelated to the purview of the mining activity authorized by the lease. If believed by the jury, the evidence here is sufficient to warrant their finding that waste oil was periodically drained from the factory engines and was dumped outside. Certainly, this activity may not be regarded as a natural, authorized incident to, or consequence of, any sand extraction operations which constituted the primary purpose of the lease relied upon by the defendant. See in this connection Mid-Continent Pipe Line Company v. Blackburn, Okl., 361 P.2d 845, 847; Hi Hat Elkhorn Mining Company v. Newman, Ky., 352 S.W.2d 71, 72; Hooper v. Dora Coal Min. Co., 95 Ala. 235, 10 So. 652.

In 58 C.J.S. Mines and Minerals § 176b, p. 377, the general rule is stated in this language:

"A lease only for mining purposes operates as a severance of the mineral estate

from the leasehold surface estate, and the rights of ingress and egress and to use as much of the surface of the land as might be reasonably necessary to enforce and enjoy the mineral estate so acquired are appurtenant to such mineral estate although not specifically granted. Such rights, however, are merely a servitude or easement on the surface title, and *the mineral lessee has no title to the surface of the land, nor has he the right to the exclusive possession thereof. Unless expressly granted, a lease to mine coal land will not authorize the lessee to dump slate and refuse upon the surface of the land.*" (emphasis ours)

This court has recognized that an oil and gas lessee enjoys an exclusive right to the use and possession of facilities constructed by him. In Pure Oil Co. v. Gear, 183 Okl. 489, 83 P.2d 389, we held that an oil and gas lessee did have such exclusive right to a ditch constructed for the purpose of transmitting salt water to a receiving pond, since the ditch was cut in a reasonably prudent manner. We there noted that cattle belonging to the subsequent agricultural lessee, who drank from the ditch, were hence "trespassers". The duty of an oil and gas lessee toward trespassing cattle was there confined to that of merely not intentionally, wilfully, or wantonly injuring the cattle and to the use of reasonable care after discovery of their peril. In the instant case, the pond where the oil collected was not part of the facilities constructed by defendant under its mining lease nor was it a part of the premises reasonably necessary to the intended mining operations.

Defendant cites other cases holding that cattle who drink polluted water from a slush pit are "trespassers". We are not concerned here with a facility incidental to, or an integral part of, defendant's sand extracting operation. The act of dumping oil on the ground, permitting it to flow across the adjacent premises and into the existing farm pond cannot be equated to the use of only such portion of the leased premises as is reasonably necessary to the operations contemplated under a mining lease. Nor can it be deemed an integral part of the sand extraction from the tract in question. See Hi Hat Elkhorn Mining Company v. Newman, supra.

■■ Defendant next complains of instruction No. 4. That instruction, as it originally appeared in the record, was incorrectly copied by the court reporter. This mistake has been duly corrected in a proper proceeding conducted below. We find no vice in instruction No. 4, in its corrected form as originally given to the jury. It does not, as defendant contends, peremptorily direct the jury to return a verdict for the plaintiff nor does it relieve her of the burden of proof imposed by law. Rather, it states that the plaintiff is entitled to such damages as she has sustained, if it be found that the defendant " * * * did dump oil upon its land and that said oil flowed over the surface of the land into the pond of the land leased by the plaintiff and caused damages to the cattle of the plaintiff * * *."

■ Defendant's next complaint is that the trial court's judgment is unsupported by any evidence showing a causal relation between defendant's alleged wrongful acts and the harm to plaintiff's cattle. Considerable evidence was presented to the jury by both parties regarding the physical location of defendant's factory in relation to plaintiff's pond, the intervening topography and the general physical characteristics of the area. There was evidence regarding the toxic contents of fluid samples taken from the pond. Expert veterinary testimony as to the cause of illness and death of the cattle and as to the effect of the toxic substances on these animals was also received.

■ The essential elements necessary to establish a cause of action may be inferred from all the facts and circumstances, and where the circumstances are such as to remove the case from the realm of conjecture and place it within the sphere of legitimate and rational inferences from established facts, a prima facie case is made. Smittle v. Illingsworth, Okl., 373

P.2d 78, 81. In civil cases the facts are provable by direct or circumstantial evidence, or by both, and it is not required that the proof rise to such degree of certainty as will support but one conclusion to the exclusion of all others. Marathon Battery Co. v. Kilpatrick, Okl., 418 P.2d 900, 917.

This court will review a verdict founded upon conflicting evidence only for the purpose of determining whether it is supported by competent evidence and is not contrary to law, and not for purpose of determining the weight of the evidence, and evidence reasonably tending to prove essential facts in case, either directly or indirectly, or by permissible inferences, is sufficient to sustain the verdict and judgment thereon. Transport Indem. Co. v. Page, Okl., 406 P.2d 980.

We therefore find the jury verdict to be supported by sufficient competent evidence.

Other contentions submitted by defendant relate to specific losses of cattle through death and sickness and loss of weight. We have reviewed the evidence in the record and find it sufficient to support the verdict.

Lastly, defendant contends that the evidence is insufficient to justify recovery of punitive damages. Plaintiff's evidence, and particularly the testimony of defendant's former employees, indicated that the practice of dumping used oil at the most convenient location outside its factory had continued over an extended period. During this time, as the plaintiff testified, she had, on a number of occasions, registered complaints with defendant's manager.

Upon review of the pertinent part of the record, we find sufficient evidence from which the jury could have determined that defendant did, over a period of several years, intentionally or through gross negligence, release and dump toxic substances at its factory; that such substances did flow across the lands leased by plaintiff and into the pond where plaintiff's cattle watered; that they did contaminate the grass and pollute the water whose ingestion by the cattle caused them to lose weight, become sick or die. The award of exemplary damages was, under these circumstances, authorized by the applicable law. 23 O.S. 1961, § 9; Morgan v. Bates, Okl., 390 P.2d 486; Garland Coal & Min. Co. v. Few, 10th Cir., 267 F.2d 785.

In her brief on appeal plaintiff attempts to bring this case within the purview of the Water Pollution Control Act of 1955, 82 O.S.1961, § 903 et seq. This act establishes certain powers and duties of the State Planning and Resources Board to prevent the pollution of waters of this State. By the terms of the act, various activities are prohibited and a procedure is established for action by the board in the event of a violation. Plaintiff did not initiate this action under the provisions of this act. Since she did not elect to so do, the provisions of this act cannot govern her rights on this appeal. However, her failure to invoke the special remedies of the act did not in any way prejudice her rights at common law. Under the terms of Section 915, supra, nothing contained in the act shall be construed to abridge or alter rights of action or remedies under the common law or statutory law, criminal or civil.

We hold that the judgment is free from errors of law and supported by competent evidence.

Affirmed.

JACKSON, C. J., IRWIN, V. C. J., and BERRY, HODGES, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, J., concurs in part and dissents in part.

The court acknowledges the services of JOHN C. ANDREWS, who with the aid and counsel of MART BROWN and HOWARD K. BERRY, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the court. The Chief Justice

then assigned the case to McINERNEY, J., for review and study, after which and upon consideration by the court, the foregoing opinion was adopted.