LAVENDER, C. J., IRWIN, V. C. J., and HODGES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurs in result.

BARNES, J., dissents.

DAYTON HUDSON CORPORATION, a corporation, Plaintiff,

v.

AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, a corporation, Defendant.

No. 54683.

Supreme Court of Oklahoma.

Dec. 23, 1980.

Lytle, Soule, Curlee, Harrington, Chandler & Van Dyke by William D. Curlee, Oklahoma City, for plaintiff.

Hemry & Hemry by Gene H. Hemry and John B. Heatley, Oklahoma City, for defendant.

OPALA, Justice.

The United States District Court for the Western District of Oklahoma certified the following questions pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.Supp.1979 § 1601 et seq.:

1. [Does] ... the personal injury liability insurance policy between Plaintiff and Defendant include[s] coverage for punitive damages?

2. If said policy includes coverage for punitive damages, would such coverage contravene the public policy of the State of Oklahoma?

3. If the public policy of Oklahoma prohibits insurance coverage for punitive damages, is there an exception to such policy when the wrongdoer is the agent, servant and employee of the insured or the insured's liability is otherwise vicarious?

4. If the above exception is present in Oklahoma law, would it be subject to being defeated upon a determination that the insured had prior knowledge of a propensity of the agent, servant or employee involved to commit the wrong involved?

We hold (a) the insurance policy in suit includes coverage for punitive damages; (b) public policy is generally contravened by coverage of punitive damages; (c) an exception to public policy exists when the insured's liability is imposed vicariously and (d) prior knowledge of an agent's propensity to commit the wrong for which punitive damages were imposed will not bar recovery against the insurer unless the insured may be said to have been guilty of "gross negligence" in not discharging the "vicious" servant.

FACTS

The plaintiff [Insured], Target Stores, Inc. [Target],[1] procured from the defendant, American Mutual Liability Insurance Co. [Insurer], a personal liability insurance policy.[2] While the policy was in force and effect, Target became legally liable, as a result of a state-court judgment, to pay Dorothy Moore [Moore] actual and punitive damages for her false arrest by Target's

---

1. Target is *Dayton-Hudson Corp.'s* (plaintiff in the instant case) predecessor-in-interest.

2. The policy in suit provided in part:
 "THE COMPANY [Insurer] WILL PAY ON BEHALF OF THE INSURED [Target] ALL SUMS WHICH THE INSURED SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES BECAUSE OF INJURY (HEREIN CALLED 'PERSONAL INJURY') SUSTAINED BY ANY PERSON OR ORGANIZATION AND ARISING OUT OF ONE OR MORE OF THE FOLLOWING OFFENSES COMMITTED IN THE CONDUCT OF THE NAMED INSURED'S BUSINESS:
 GROUP A—FALSE ARREST, DETENTION OR IMPRISONMENT, OR MALICIOUS PROSECUTION: * * *
 GROUP D—MENTAL INJURY, MENTAL ANGUISH, SHOCK AND HUMILIATION."

agent.[3] The insurer paid the award of actual damages but refused to pay the punitive damages. The insured, who paid the award for punitive damages,[4] brought suit in federal court to recover from the insurer the amount of that award.

## I.

### SCOPE OF INSURANCE COVERAGE

There is *no* Oklahoma case law on whether the language of an insurance policy providing for payment of *"all sums* which the insured might become legally obligated to pay" is sufficiently broad to include punitive damages. .

The insurer contends the policy does not include punitive damages recovered against the insured because its terms do not expressly provide for payment of that class of damages. Instead, the provision covers "damages because of injury" which the insurer claims is confined to payment for actual damages. Insurer also argues that since both parties stood *vis-à-vis* each other in an equal bargaining position,

the insurance agreement is not to be viewed as an adhesion contract. The insured, if it so desired, could have procured additional coverage for punitive damages and have its premium adjusted accordingly.

The insured, on the contrary, urges that a proper construction of the policy, as a matter of law, provides it with coverage for punitive damages, because such award is one of the sums which the insured became legally obligated to pay as damages arising from false arrest.

A survey of pronouncements from other jurisdictions, which have addressed this specific issue, indicates a split of authority with the majority holding the terms of the policy embrace liability for punitive damage.[5] In *Harrell v. Travelers Indemnity Co.*,[6] an Oregon decision, the policy obligated the insurer to pay for the insured *all sums* which the insured shall become legally obligated to pay as damages. It contained neither an express exclusion nor a like inclusion of punitive damages. The state law favored the insured where the contract was ambiguous.[7] In *Norfolk & Western Rail-*

---

**3.** For appellate disposition of the false arrest suit, see *Moore v. Target Stores Inc.*, Okl.App., 571 P.2d 1236 [1977].

**4.** The punitive damages award was $35,000.00.

**5.** *General Cas. Co. of America v. Woodby*, 238 F.2d 452 [6th Cir. 1956]; *Ohio Cas. Ins. Co. v. Welfare Finance Co.*, 75 F.2d 58 [8th Cir. 1934]; *Concord Gen. Mut. Ins. Co. v. Hills*, 345 F.Supp. 1090 [D.Me.1972]; *Southern Farm Bureau Cas. Ins. Co. v. Daniel*, 440 S.W.2d 582 [Ark.1969]; *Abbie Uriguen Olds Buick, Inc. v. U.S. Fire Ins. Co.*, 95 Idaho 501, 511 P.2d 783 [1973]; *Carroway v. Johnson*, 245 S.C. 200, 139 S.E.2d 908 [S.C.1965]; *Dairyland County Mut. Ins. Co. v. Wallgren*, 477 S.W.2d 341 [Tex.Civ. App.1972]; *Harrell v. Travelers Indemnity Co.*, 567 P.2d 1013 [Or.1977]; *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Thornton*, 244 F.2d 823 [4th Cir. 1957]; *Fagot v. Ciravola*, 445 F.Supp. 342 [E.D.La.1978]; *First National Bank v. Fidelity & Deposit Co.*, 283 Md. 228, 389 A.2d 359 [Md.1978]; *Lazenby v. Universal Underwriters Ins. Co.*, 383 S.W.2d 1 [Tenn.1964]; *Colson v. Lloyds of London*, 435 S.W.2d 42 [Mo.App.1968]; *Norfolk & Western Ry. v. Hartford Acc. & Indemn. Co.*, 420 F.Supp. 92 [N.D.Ind.1976]; *State v. Glenn Falls Ins. Co.*, 404 A.2d 101, 102–105 [Vt.1979]; *Price v. Hartford Acc. & Indemn. Co.*, 108 Ariz. 485, 502 P.2d 522 [1972]. *Contra: Northwest-*

*ern Nat. Casualty Co. v. McNulty*, 307 F.2d 432 [5th Cir. 1962]; *American Surety Co. of N.Y. v. Gold*, 375 F.2d 523 [10th Cir. 1967]; *American Ins. Co. v. Saulnier*, 242 F.Supp. 257 [D.C. Conn.1965]; *Nicholson v. American Fire & Cas. Ins. Co.*, 177 So.2d 52 [Fla.App.1965]; *Tedesco v. Maryland Cas. Co.*, 127 Conn. 533, 18 A.2d 357 [Conn.1941]; *Crull v. Gleb*, 382 S.W.2d 17 [Mo.App.1964]; *Ging v. American Liberty Ins. Co.*, 293 F.Supp. 756 [D.C.Fla.1968]; *City Products Corp. v. Globe Indemn. Co.*, 88 Cal.App.3d 31, 151 Cal.Rptr. 494 [1979]; *Hartford Acc. & Indemn. Co. v. U.S. Concrete Pipe Co.*, 369 So.2d 451 [Fla.App.1979].

**6.** Supra note 5, 567 P.2d at 1014.

**7.** In *Harrell*, supra note 5, 567 P.2d at 1015, the court said:

"... [S]uch provisions were ambiguous, at the least, so as to require the resolution of any reasonable doubts against the insurance company; that upon reading the policy provisions as set forth above, and in the absence of any express exclusion of liability for punitive damages, a person insured by such a policy would have reason to suppose that he would be protected against liability for 'all sums' which the insured might become 'legally obligated to pay' and that the term 'damages' would include all damages, including punitive damages which be-

*way Co. v. Hartford Accident and Indemnity Co.*,[8] the court similarly reasoned that where the provisions cover "all sums which the insured shall become legally obligated to pay", the policy unambiguously includes all sums. Punitive damages, which became liquidated by judgment, were considered a "sum" included in the policy. In short, absent a specific exclusion of punitive damages, the court in both cited cases resolved the issue in favor of the insured.

The majority rule is in accord with the reasoning followed by this court in interpreting insurance policies. These contracts are to be liberally construed in favor of the object to be accomplished.[9] Where the contract is susceptible of two meanings, the words of inclusion are liberally construed in favor of the insured and words of exclusion are strictly construed against the insurer.[10]

The policy provisions in the case at bar make no distinction between actual and punitive damages. Punitive damages are not specifically excluded. Under the plain language of the policy the company promises to pay on behalf of the insured *all sums* which the insured shall be legally obligated to pay as damages because of injury arising from false arrest. The law is clear in Oklahoma that insurance policies are to be con-

strued most liberally to favor recovery. We hold that if the language of this policy may be deemed in law to be patently ambiguous, doubts about its meaning must be resolved in favor of the insured. Hence the policy provision—"for all sums which the insured might become legally obligated to pay"—is sufficiently broad to include liability for punitive damages.

## II.

## PUBLIC POLICY CONSIDERATIONS

■ The determinative factor in resolving whether an insurer is liable for punitive damages imposed against an insured is to be rested on public policy objectives of reparations for the sake of civil punishment. Oklahoma has given legislative sanction to the common-law rule of punitive damages. 23 O.S. 1971 § 9.[11] We have on many occasions emphasized this legislative policy declaration in recognition of the purpose punitive damages is to serve: punishment of the offender and the deterrence of others, for the benefit of society, from the commission of like wrongs.[12] Although punitive damages may result in a windfall for the plaintiff, the primary and ultimate ben-

came, by judgment, a 'sum' that he became 'legally obligated to pay'.

Defendant insurance company could have removed this ambiguity easily by including an express exclusion from liability for punitive damages, but apparently chose not to do so. As stated by Appleman, *supra* (at 86 Supp.), 'there is nothing in the insuring clause that would forewarn an insured that such was to be the intent of the parties', if indeed, such was the intent of the insurance company."

**8.** Supra note 5, 420 F.Supp. at 94.

**9.** 36 O.S. 1971 § 3621; *Wiley v. Travelers Ins. Co.*, Okl., 534 P.2d 1293 [1975].

**10.** We so held in *Conner v. Transamerica Ins. Co.*, Okl., 496 P.2d 770 [1972], a case where the terms of the policy were similar to the one under consideration. The policy in *Conner* called for payment of "all sums which the insured shall become legally obligated to pay as damages" because of personal injury. It also contained a similar provision for defense of suits on behalf of the insured. *Conner*, though distinguishable because we dealt there with an insurer's obligation to defend, does nonetheless

support our conclusion that policy language, under review here, with regard both to payment and defense is susceptible of two different meanings, and is hence ambiguous. In holding for the insured, we said in *Conner* that the insurer could have limited the risk for which it is responsible if it had expressly excluded from coverage both punitive damages and the defense of that element of recovery. *Aetna Ins. Co. v. Zobiotsky*, Okl., 481 P.2d 761 [1971]; *Jesko v. American-First Title and Trust Co.*, 603 F.2d 815 [10th Cir. 1979].

**11.** The terms of 23 O.S. 1971 § 9 provide: "In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

**12.** *Oller v. Hicks*, Okl., 441 P.2d 356, 360 [1968]; *Cox v. Theus*, Okl., 569 P.2d 447, 449–450 [1977]; *Walton v. Bennett*, Okl., 376 P.2d 240, 243 [1962].

efit of such damages accrues to the community as a whole. It comes as an imposition of restraint on the potential transgressor.[13] When considering whether punitive damages may be insurable, this legislated policy becomes important because the question is not so much the efficacy of the policy underlying punitive damages but rather whether that policy can be implemented when the penalty for the misdeed is permitted to be levied on one other than the actual transgressor.[14]

On this issue the courts remain divided. The split is brought about by the tenacity with which some courts adhere to the efficacy-of-punishment theme of punitive damages. The leading case advancing "no coverage" of punitive damages is *Northwestern National Cas. Co. v. McNulty*.[15] This case arose out of an automobile accident involving a drunken driver. The court noted that, where punitive damages are awarded for punishment and deterrence, policy considerations would seem to require that the damages rest ultimately, as well as nominally, on the party actually responsible for the wrong. If that person were permit-

ted to shift the burden to an insurance company—the court reasoned—punitive damages would serve no useful purpose since exemplary awards frequently have no relation to the injured party's actual injuries. If liability could be shifted to the insurer, the court added, the burden would ultimately come to rest not on the insurance company but rather on the public at large, since the added recovery would be passed along to premium payers. Society would then be punishing itself rather than the actual author of the wrong.

The leading case holding that insurance of punitive damages is not barred by public policy is *Lazenby v. Universal Underwriters Inc., Co.*[16] *Lazenby*, while acknowledging the policy that underlies imposition of punitive damages, found the denial of insurance protection to an indistinguishable class of potential tortfeasors to be an ineffective guaranty for deterring misconduct. The court reasoned that public policy is synonymous with public good and that a contract should not be declared void unless it is of the character which clearly tends to hinder or harm public welfare or common weal.

13. *Tomlinson v. Bailey*, Okl., 289 P.2d 384 [1955] (syllabus 2); *Rhyne v. Turley*, 37 Okl. 159, 131 P. 695 [1913].

14. *American Surety Co. of N.Y. v. Gold*, supra note 5, 375 F.2d at 527.

15. Supra note 5, 307 F.2d at 440 [5th Cir. 1962]. In *McNulty* the court said, after first deciding that it was following the traditional punishment deterrent purpose as the underlying punitive damages policy: "Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent."

16. *Lazenby v. Universal Underwriters Ins. Co.*, supra note 5. Another case supporting the coverage position is *Harrell v. Travelers Indemnity Co.*, supra note 5. The court in *Harrell*, at 1018, considered the effect of denying insurance for punitive damages and stated: "It necessarily follows that if the rule proposed by defendant were adopted, the conduct subject to

possible liability for punitive damages, and which could no longer be the subject of protection by a valid contract of insurance, would include a wide spectrum of conduct that would impose liability not only upon automobile drivers, but also upon business and professional persons, firms and corporations, as well as upon ordinary persons when engaged in a wide variety of activities." The court in *Harrell* at 1019, disagreeing with the *McNulty* "no coverage" argument—that permitting insurance coverage of punitive damages would ultimately pass that burden on to the public—said: "On the contrary, an insurance company which deliberately enters into a contract to provide coverage against liability for punitive damages is free to charge either a separate or additional premium for that risk". The dissent in *Harrell* at 1028, noted the court's refusal to give effect to the established policy—that of punishment and deterrence—when it stated: "The purpose of compensatory damages is to compensate, and this purpose is carried out no matter who is held ultimately responsible for payment. The purpose of punitive damages, on the other hand, is to deter, and this purpose is not carried out if the one who ultimately pays is an insurer rather than the wrongdoer."

Clearly the purpose of exemplary damages is to punish and deter. Allowing an insurance company to bear the financial impact specifically intended for those guilty of "oppression, fraud or malice" [17] is to contravene the very public policy we are charged to recognize and implement. We adopt the *McNulty* rule because its reasoning accords best with the current policy of Oklahoma statutory law with respect to imposition of punitive damages. Giving full effect to the purpose punitive damages must serve, we hold that a culpable party is not to be permitted to escape the civil consequences of its wrong.

## III.

## RECOGNIZED EXCEPTION TO PUBLIC POLICY AGAINST ALLOWING INSURANCE PROTECTION FROM LIABILITY FOR PUNITIVE DAMAGES

 In almost all jurisdictions which disallow insurance coverage for punitive damages, an exception is recognized for those torts in which liability is vicariously imposed on the employer for a wrong of his servant. [18] In that class of litigation, public policy does not inhibit a shift in liability incidence to the insurer unless the employer's volition was either directly or indirectly an element in the commission of the harm. We are in accord with this view and hold that public policy against insurance protection for punitive damages does not preclude recovery of indemnity from the insurer by an employer to whom either willfulness or gross negligence of his harm-dealing employee became imputable for imposition of liability under the Oklahoma application of the *respondeat superior* doctrine. [19]

We must remain mindful that contracts should not be declared void on the ground of public policy except in those cases that are free from doubt. [20] Prejudice to the public interest must hence be clearly apparent before a court is justified in pronouncing a solemn agreement to be of no effect. Contract right constitutes no small part of the liberty of a citizen. One of the law's important functions is to uphold the binding obligation of a promise rather than to enable the parties to escape from it on the pretext of public policy. Contracts must stand unless it clearly appears that public right or public weal is contravened. [21]

**17.** 23 O.S. 1971 § 9, supra note 11.

**18.** *Northwestern Nat. Cas. Co. v. McNulty*, supra note 5; *General Cas. Co. of America v. Woodby*, supra note 5; *Commercial Union Ins. Co. of N.Y. v. Reichard*, 404 F.2d 868 [5th Cir. 1968]; *Sterling Ins. Co. v. Hughes*, 187 So.2d 898 [Fla.App.1966]; *Esmond v. Liscio*, 224 A.2d 793 [Pa.1966].

**19.** Oklahoma sanctions the imposition of punitive damages' liability on the employer for willful or grossly negligent acts of servants. Our decision in *Pennsylvania Glass Sand Corp. of Okl. v. Ozment*, Okl., 434 P.2d 893 [1967] affords an example of punitive damages' recovery against a corporate defendant for the acts of its employees. See also, *Russell-Locke Super-Service v. Vaughn*, 170 Okl. 377, 40 P.2d 1090, 1095 [1935]; *Holmes v. Chadwell*, 169 Okl. 191, 36 P.2d 499, 500 [1934]; *Hunt-Murry Co. v. Gibson*, 157 Okl. 112, 11 P.2d 123, 125 [1932]; *Mayo Hotel Co. v. Danciger*, 143 Okl. 196, 288 P. 309, 312–313 [1930].
As a theory of recovery vicarious liability occupies a special status. The law often singles out one who is liable vicariously for a more advantageous treatment than that which is otherwise accorded. In *Porter v. Norton-Stuart Pontiac-Cadillac of Enid*, Okl., 405 P.2d 109 [1965], a joint tortfeasor with but a vicarious or constructive liability was allowed to seek indemnity from his co-wrongdoers. We did not hesitate to carve out an exception to the common-law rule against contribution among joint tortfeasors. Similarly, the exception we recognize here today allows a vicarious tort obligor to shift his liability for punitive damages to others—a power other like wrongdoers cannot enjoy. The two exemptions—one from prohibition against contribution and the other against shifting liability on a penalty—are consistent counterparts of a conscious policy that affords an "innocently condemned" civil obligor the means by which to alter the incidence of his liability.

**20.** *Hughes v. Woodward*, 182 Okl. 372, 77 P.2d 685, 686–687 [1938]; *Johnston v. J. R. Watkins Co.*, 195 Okl. 341, 157 P.2d 755 [1945].

**21.** *Baltimore & Ohio Southwestern Railway v. Voight*, 176 U.S. 498, 505, 20 S.Ct. 385, 387, 44 L.Ed. 560 [1900]; *Telex Corp. v. Hamilton*, Okl., 576 P.2d 767, 769 [1978].

## IV.

### PRIOR KNOWLEDGE OF SERVANT'S VICIOUS PROPENSITIES AS A BASIS FOR BARRING RECOVERY AGAINST THE INSURER

The last issue certified deals with whether the exception carved out for vicarious liability cases avails also in those nonvicarious liability cases where it is shown that the insured did in fact have prior knowledge of the servant's propensities to inflict the harm for which recovery was imposed against the insured.

In *Ohio Casualty Ins. Co. v. Welfare Finance Co.*,[22] the court reasoned that if a master had reason to know in advance that his servant was likely to commit the injurious act for which liability was imposed, the situation may be legally analogous to that where the insured himself commits a willful or intentional injury.

 We are not in complete accord with this view. When recovery against the employer for an act of his servant is rested on prior knowledge of the servant's propensity to commit the very harm for which damages are sought, the basis of liability invoked is not *respondeat superior* but rather the employer's *own negligence* in not discharging the unfit servant. While "willfulness" and "malice" are implicit in harboring a vicious dog with propensity to bite,[23] there is *no* rule which makes the master's negligence "willful" or "gross" because he should have anticipated the risk of injury from prior erratic behavior of his servant. Cases in which the master may have had reason to foresee the servant's injurious conduct from past events doubtless fall into a wide range of variety. We are not prepared to pronounce a *per se* rule for application to the entire class of litigation. We think the ultimate answer depends in each instance on whether prior knowledge makes the master's negligence "ordinary" or "gross".[24] If the former is true, the exception extended to vicarious liability cases should apply with equal force. If gross negligence be present—which is the equivalent of positive wrongdoing[25]—public policy would prohibit the employer from shifting his burden to the insurer.

Whether the employer in this cause was guilty of "reckless disregard" of the safety of others—the equivalent of positive wrongdoing—in keeping an employee who was in fact "vicious" rather than merely "unfit" or "erratic" must be regarded as a fact issue to be determined in the course of the pending federal litigation.[26]

LAVENDER, C. J., IRWIN, V. C. J., and BARNES and HARGRAVE, JJ., concur.

WILLIAMS, J., concurs in result.

HODGES, SIMMS, and DOOLIN, JJ., concur in part/dissent in part.

HODGES, J., concurring in part, dissenting in part.

I dissent to the majority's disposition under Proposition II.

In my opinion, policy coverage for punitive damages would not contravene the public policy of the State of Oklahoma.

---

22. Supra note 5, 75 F.2d at 60.

23. *Peerson v. Mitchell*, 205 Okl. 530, 239 P.2d 1028, 1030 [1951].

24. "Ordinary negligence" is defined in 25 O.S. 1971 § 6 as "want of ordinary care and diligence". "Gross negligence" is defined in 25 O.S. 1971 § 6 as "want of slight care and diligence". "Gross negligence" is defined by case law as such an "entire want of care or recklessness of conduct as is the equivalent of 'positive misconduct' or evinces a 'conscious indifference to consequences'". *Wootan v. Shaw*, 205 Okl. 283, 237 P.2d 442, 444 [1951].

25. *Wootan v. Shaw*, supra note 24 at 444. Under the statutory definition of "ordinary" negligence, the employer's retention of an erratic or unfit servant does not appear to be more than "ordinary" negligence, while engaging a "vicious" person may, under some circumstances, constitute "reckless disregard of safety of others".

26. It is not amiss to add that in civil law the element of "prior knowledge" is not tantamount to willfulness of conduct. Rather, willfulness stems from "guilty knowledge" which is synonymous with "culpable knowledge" or "scienter". *In re Initiative Petition 272, State Question 409*, Okl., 388 P.2d 290, 293 [1964].

I am authorized to state that Justice SIMMS and Justice DOOLIN concur in the views herein expressed.