**In re Charles SUMNER and Charlotte Sumner d/b/a Charlie's Auto Service, Debtors.**

**Charles SUMNER and Charlotte Sumner d/b/a Charlie's Auto Service, Plaintiffs,**

**v.**

**SOUTHWESTERN BELL YELLOW PAGES, INC., Defendant.**

**Bankruptcy No. 87–00798–C.
Adv. No. 89–0201–C.**

United States Bankruptcy Court,
N.D. Oklahoma.

Feb. 14, 1990.

Donald A. Flasch, Tulsa, Okl., for plaintiffs.

William Jacobus, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION AND ORDER

STEPHEN J. COVEY, Bankruptcy Judge.

On March 27, 1987, Debtors, Charles and Charlotte Sumner d/b/a Charlie's Auto Service, filed for relief under Chapter 13 of the Bankruptcy Code. This case was later converted to a Chapter 11 on August 6, 1987.

In 1984, 1985, 1986 and 1987 Southwestern Bell Yellow Pages ("Southwestern Bell") printed ads for the Debtors' auto service pursuant to four (4) annual written contracts. These contracts contained a clause limiting the liability of Southwestern Bell in the event it inadvertently omitted an ad that had been contracted for. This clause stated that Southwestern Bell's liability would be limited to the amount paid by the customer for the ad. Even though Southwestern Bell printed the Debtors' ads for each of the four (4) years, the Debtors never paid for any of them.

In May 1987, after the filing of the Chapter 13 case but before its conversion to Chapter 11, the Debtors received a letter from Southwestern Bell notifying them that their contract for Yellow Page advertising for the year 1988 had been cancelled for failure to pay for the previous advertisements. The cancelled contract for 1988 was attached to the letter. The letter stated that the cost of an ad in the 1988 Yellow Pages was $1,560.00 and if this was paid in cash immediately the ad would be printed. The letter further stated that if payment in full would cause grave hardship the Debtors should contact Southwestern Bell to see if alternative arrangements could be made. Charlotte Sumner, one of the Debtors, in response to this letter, called Southwestern Bell and spoke with a sales representative and did make alternative arrangements as follows: Southwestern Bell would file a claim in the pending Chapter 13 proceeding for the past-due amount, it would print the Debtors' ad for 1988 upon receipt of a check for $249.60 and, the Debtors would pay the remaining balance in monthly installments commencing in November of 1987. Debtors immediately sent a cashier's check to Southwestern Bell in the required amount and said check was received and cashed in the normal course of business. Thereafter Debtors placed numerous phone calls to Southwestern Bell to ensure that their ad would be included in the 1988 Yellow Pages and they were repeatedly assured that their ad was "in the computer" and would appear.

In spite of these assurances, Debtors were startled to receive a notice on October 29, 1987, from Southwestern Bell, informing them that their ad for 1988 had been cancelled and would not appear in the forthcoming Yellow Pages because the Debtors had failed to pay for the 1988 ad in full. This was the first notice the Debtors had received that their ad would not be printed and at that point in time it was too late to pay for the ad in full because the

Yellow Pages had already gone to the printer. Charlotte Sumner made a series of telephone calls to Southwestern Bell complaining about its action in cancelling the ad. One representative had no explanation for the cancellation and said that the ad should have been printed. Another employee informed her that there had been a rule change in September of 1987 which provided that anyone who had previously filed bankruptcy must pay for their Yellow Page advertising in full before it could be printed. Charlotte Sumner was further informed that this rule change had been programmed into the computer and that the computer had automatically cancelled her ad. The representative informed Charlotte Sumner that she should have been notified of this rule change and given an opportunity to pay for her ad in full before the ad was cancelled.

Debtors bring this action for damages alleging that Southwestern Bell breached the oral contract between the parties to print Debtors' ad and seek to recover lost profits and additional expenses incurred in advertising their auto service business in other publications. Southwestern Bell admits that it breached the oral contract but argues that its damages are limited to the amount paid by the Debtors for the advertising, that is, $249.60. Southwestern Bell contends that the oral contract of May 1987, by implication, includes all the terms of the previous years' written contracts, including the provision limiting liability.[1]

Jurisdiction to hear this matter is vested in this Court pursuant to Tit. 28 U.S.C. § 1334. This is a core proceeding pursuant to Tit. 28 U.S.C. § 157(b)(2)(A), (E), (O).

The issue is whether the limited liability provision applies to the oral contract between the Debtors and Southwestern Bell. In order for the clause to apply, the parties must have agreed to its inclusion. That is, they must have had a meeting of the minds. Charlotte Sumner testified that she had never read the limited liability provision in the previous contracts and was not aware of its existence. This provision, therefore, is not part of the oral contract because there was no meeting of the minds

between Southwestern Bell and the Debtor as to its inclusion. The Debtors cannot be deemed to have impliedly agreed to a provision in a previous written contract of which they were unaware. It is true that a party who signs a written contract is bound by its terms regardless of whether they have read the contract or have knowledge of the terms. It goes to far, however, to say that parties to an oral contract impliedly incorporate terms of a prior written contract of which one of the parties is unaware. Also Southwestern Bell unilaterally cancelled the proposed written contract for 1988 and now seeks to use selected terms for its own benefit. This cannot be done without the agreement of the parties.

Even if the limited liability clause was held to apply to the oral contract, it would nonetheless be unenforceable if the failure to print the ad was caused by gross negligence or willful and wanton conduct on the part of Southwestern Bell. *Vails v. Southwestern Bell Telephone*, 504 F.Supp. 740 (W.D.Okla.1980); *Wheeler Stuckey, Inc. v. Southwestern Bell Telephone*, 279 F.Supp. 712 (W.D.Okla.1967). "Gross negligence" has been defined as "want of slight care and diligence" and has been interpreted as an "entire want of care or recklessness of conduct ... evinc[ing] a 'conscious indifference to [the] consequences'." *Dayton Hudson Corp. v. American Mutual Liability Insur. Co.*, 621 P.2d 1155, 1161, n. 24 (Okla.1980) (quoting *Wooten v. Shaw*, 205 Okl. 283, 237 P.2d 442, 444 (1951)). "Willful and wanton misconduct" goes beyond gross negligence in that the actor knows that the conduct will probably result in injury. *Foster v. Emery*, 495 P.2d 390, 392 (Okla.1972). Southwestern Bell alleges that its admitted breach of contract in failing to print the Debtors' ad in the 1988 Yellow Pages was not the result of gross negligence or willful and wanton conduct. It argues that the computer "did it" and that its conduct amounts, at most, to mere negligence. This Court rejects that argument. The service representative made an agreement with the Debtors in May of 1987 that their ad for the 1988 book would be printed if

---

1. It should be remembered that the written contract for 1988 which had never been signed by the parties was returned to the Debtor by Southwestern Bell marked cancelled.

**380**

they paid the $249.60 immediately with the balance of the $1,560.00 to be paid in monthly installments beginning in November of 1987. Thereafter Southwestern Bell unilaterally created a new rule requiring bankrupts to pay for their ads in full. When Southwestern Bell did this, they intentionally breached the oral contract with the Debtors. This intentional breach by Southwestern Bell amounts to willful and wanton conduct on its part. Southwestern Bell introduced evidence at the trial of the importance of advertising in the Yellow Pages and this Court will take judicial notice that for a small business like the Debtors failure to have your ad printed in the Yellow Pages is devastating. Their intentional breach of the oral contract by adopting a new rule in regard to bankrupts and then failing to notify the Debtors of the new rule demonstrates a conscious indifference to the consequences of their acts which was certain to injure the Debtors. This Court will not allow Southwestern Bell to hide behind the "computer excuse" and treat customers with whom they have binding contracts in this shabby fashion. In fact, the computer did not do it. Humans created the new rule and programmed it in the computer. At a minimum Southwestern Bell should have adopted procedures to notify customers who were going to have their ads cancelled in time for these customers to make full payment if they could. It is bad enough for Southwestern Bell to intentionally breach its contract by adopting a new rule but this wrongful conduct is compounded when they do not even notify the customers of the rule change in time for them to do something about it. The clause limiting liability therefore does not apply under the facts and circumstances of this case even if it is part of the oral contract.

The Court finds the Debtors did not introduce sufficient evidence to establish lost profits caused by the failure to print the ad. However, evidence was introduced establishing expenses in the amount of $3,800.00 for alternate advertising in other publications. Debtors should also be refunded the amount of their check in the amount of $249.60. Therefore the total damages suffered by the Debtors are $4,049.60. Subtracted from this amount should be the sum of $1,560.00 which the Debtors would have paid for advertising in 1988 if their ad had been printed. Therefore the net damages to the Debtors are $2,489.60.

Judgment is entered in favor of the Debtors against Southwestern Bell Yellow Pages, Inc. in the amount of $2,489.60, plus costs.