UNIT PETROLEUM COMPANY, an Oklahoma corporation, Plaintiff–Appellant,

v.

NUEX CORP., A Delaware Corporation, Convest Production Company, A Texas Limited Partnership, The Federal Deposit Insurance Corporation in its corporate capacity for the United Oklahoma Bank of Oklahoma City; Seattle–First National Bank, a national banking association; and the Federal Deposit Insurance Corporation, acting in its corporate capacity as receiver for Penn Square Bank, N.A., a former national bank association, Defendants,

and

Devilliers, Inc., Attorneys for Defendant Nuex Corporation, Respondent–Appellee.

No. 74220.

Supreme Court of Oklahoma.

March 5, 1991.

As Corrected March 20, 1991.

Doerner, Stuart, Saunders, Daniel & Anderson by Richard P. Hix and Scott R. Rowland, and Mark E. Schell, Tulsa, for plaintiff-appellant.

Lee and Green by Mitchell A. Lee and Timothy W. Green, Oklahoma City, for respondent-appellee.

HODGES. Vice Chief Justice.

The issue presented in this case is whether the trial court erred in denying the plaintiff's Motion for Sanctions against the law firm of DeVilliers, Inc. Sanctions were sought against the law firm for failure to dismiss the counterclaim which lacked any legal or factual basis. Because we find that liability under Okla.Stat. tit. 12, § 2011 (Supp.1988) does not extend to the law firm represented by an attorney signing a document, we affirm.

On December 30, 1988, Unit Petroleum Company (Unit) filed suit against several defendents including Nuex Corporation (Nuex) seeking a money judgment, a declaratory judgment, and foreclosure of Unit's lien against certain gas wells including the Reed # 3 well.

Nuex filed an answer and counterclaim signed by J. Matthew DeVilliers. After the execution of disclaimers and confession of judgment by some of the defendants, only Nuex's counterclaim remained. The counterclaim was tried to the court and resulted in a directed verdict in Unit's favor. Before the trial Nuex filed a Proposed Pre–Trial Conference Order signed by Wm. Rodney DeVilliers, Jr., and a Trial Brief signed by J. Matthew DeVilliers.

After trial, Unit filed a Motion for Sanctions under Okla.Stat. tit. 12, § 2011 (Supp. 1988), against the firm of DeVilliers, Inc. as counsel for Nuex. After a hearing, the trial court found that section 2011 only applies to the signing of pleadings and denied the motion.

Title 12, section 2011 of the Oklahoma Statutes provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address and Oklahoma Bar Association identification number shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Except for the requirement that an attorney's Oklahoma Bar Association identification number be on a paper, section 2011 is identical to Rule 11 of the Federal Rules of Civil Procedure.

We have not previously decided whether a law firm is subject to sanctions under section 2011. However, the United States Supreme Court has recently addressed the issue under Rule 11 in *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

In *Pavelic*, the plaintiff's attorney, Ray L. LeFlore, signed the complaint and the amended complaint. Thereafter, LeFlore formed a partnership with Radovan Pavelic and the remaining court papers were signed:

> " 'Pavelic & LeFlore
> By /s/ Ray L. LeFlore
> (A Member of the Firm)
> Attorneys for Plaintiff' "

After trial and upon motion for the imposition of sanctions by the opposing party, the district court held a hearing. After the hearing, the district court imposed sanc-

tions under Rule 11 against the law firm of Pavelic & LeFlore. After Pavelic objected to the sanction on the basis that the firm did not exist during the time that the complaint and the amended complaint were filed, the district court shifted half of the sanction to LeFlore personally. Pavelic also contended that a court does not have the power under Rule 11 to impose sanctions against the law firm. However, the district court found that it could impose sanctions under Rule 11 against both the attorney and the law firm.

After determining that the phrase "the person who signed [the paper]" is ambiguous read in isolation, the United States Supreme Court found that when taken in context the phrase is clear and does not include a law firm on whose behalf an attorney has signed papers. Although the opinion in *Pavelic* is not binding on this Court, we agree with its rationale and holding.

There are times when the Legislature uses the term "person" to include business entities. However, that is not the case with section 2011. Throughout both section 2011 and Rule 11, the language is clear that the requirements are addressed to an individual, not a law firm. As pointed out in *Pavelic*, the rule begins by requiring an attorney to sign every paper. It would be absurd to require a law firm to sign the documents. The rule then goes on to establish that the signing is a certification that the attorney has read the document and that the document is well grounded in fact and in law and is not interposed for an improper purpose. It would be strange to construe this phrase as requiring a law firm to certify that it had read the document. Again, the rule is addressing an individual rather than a firm. The next

phrase sets out the repercussions of failing to sign a paper; the paper shall be stricken. This phrase refers to the absence of an individual's signature, not a law firm's. It would be inconsistent to construe the last phrase "the person who signed [the paper]" as including a law firm when none of the other reference can properly be so construed.

Section 2011, like Rule 11, is written in very precise language. The sanction extends to "the person who signed [the paper], a represented party, or both." By enumerating who is subject to the sanctions and omitting law firms from the list, the Legislature must have intended the sanctions run only against those individuals who are listed.

For the foregoing reasons, we find that sanctions under section 2011 cannot properly be imposed against a law firm but only against the individual attorney. We need not address the reasoning of the trial court. When the trial court reaches the correct decision, even if for the wrong reasons, this Court will affirm. *Atlantic Richfield Co. v. State ex rel. The Wildlife Conservation Comm'n*, 659 P.2d 930, 934 (Okla.1983).

JUDGMENT OF THE DISTRICT COURT AFFIRMED.

LAVENDER, SIMMS, ALMA WILSON and SUMMERS, JJ., concur.

HARGRAVE, J., concurs in result.

OPALA, C.J., and DOOLIN and KAUGER, JJ., dissent.

OPALA, Chief Justice, with whom KAUGER, Justice, joins, dissenting.

Today the court holds that the sanction provisions of 12 O.S.Supp.1987 § 2011[1] are

---

**1.** The pertinent terms of 12 O.S.Supp.1987 § 2011 are:

"*Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name,* whose address and Oklahoma Bar Association identification number shall be stated. * * * *The signature of an attorney* or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge,

information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * *If a pleading motion, or other paper is signed in violation of this rule, the court,* upon motion or upon its own initiative, *shall im-*

not invocable against the law firm (or professional corporation) of the individual lawyer whose signature on a court document was found to be in violation of the statute. I cannot accede to this pronouncement. In my view, when the signing lawyer is found to have violated § 2011, the law firm entity is *prima facie* jointly and severally liable *unless* it shows, by clear and convincing proof, that the violation stems from an act that lies outside the scope of its relationship with the signer.[2]

## I.

### THIS COURT IS NOT BOUND BY *PAVELIC*[3]

The court's opinion closely tracks that of the U.S. Supreme Court in *Pavelic & LeFlore v. Marvel Entertainment Group*,[4] which held that Rule 11, F.R.Civ.P., does *not* authorize a court to impose sanctions against a culpable lawyer's law firm.[5] Although the pedigree of our § 2011 clearly is traceable to Rule 11, *Pavelic* is not binding on this court. It came *after* Oklahoma's adoption of the Rule 11 sanction provisions now embodied in § 2011. This court is hence free to interpret § 2011 differently. Had the federal high court placed its gloss on that rule *before* § 2011 came to be enacted in Oklahoma, we would

have been bound today by the Court's *Pavelic* pronouncement.[6]

## II.

### THE TERMS OF § 2011 ARE INVOCABLE AGAINST A SIGNER'S LAW FIRM

Section 2011 requires "at least *one attorney of record in his individual name*" to sign "[e]very pleading, motion, and other paper." (Emphasis added.) Also, it is the "signature of *an attorney*" which "constitutes a certificate by *him* that he has read the pleading, motion, or other paper...." Although no specific reference is made to the signer's law firm, § 2011 mandates that sanctions be imposed "upon *the person* who signed." (Emphasis added.) I construe this operative phrase to include "a *juridical* person on whose behalf the document is signed."[7] I hence align myself with the Rule 11 construction by Justice Marshall in his dissent from *Pavelic*. There, he observed that "one can reasonably assume that the word 'person' indicates more than just natural persons, encompassing partnerships and professional corporations as well."[8]

The goals of § 2011 support this construction. Three of the Rule 11 objectives noted by Marshall, J., in the *Pavelic* dissent

---

pose upon the person who signed it, a represented party, or both, *an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." (Emphasis added.)

**2.** An arrangement between a law firm (or professional corporation) and one of its members may allow the individual lawyer to carry on professional activities outside the course of the entity's business.

**3.** *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

**4.** See *supra* note 3.

**5.** Before *Pavelic,* the circuits disagreed over whether Rule 11 authorizes sanctions against a lawyer or entity other than the signer. See, e.g., *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1130 (5th Cir.1987) (answering the ques-

tion in the negative); *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1479 (2nd Cir. 1988) (holding in the affirmative), *reversed* by the Court in *Pavelic, supra* note 3. In two other cases, where the issue does not appear to have been presented, sanctions against the law firm were upheld. See *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928 (7th Cir.1989); *E.E. O.C. v. Milavetz and Associates, P.A.,* 863 F.2d 613 (8th Cir.1989).

**6.** See *Matter of Estate of Speake,* 743 P.2d 648, 650 (Okl.1987), where this court held that "[j]udicial interpretation by a court of last resort impressed on adopted legislation before its reception cannot be changed by jurisprudence of the receiving state."

**7.** *Pavelic & LeFlore v. Marvel Entertainment Group, supra* note 3, 493 U.S. at ——, ——, 110 S.Ct. at 460 (Marshall, J., dissenting).

**8.** *Pavelic & LeFlore v. Marvel Entertainment Group, supra* note 3, 493 U.S. at ——, ——, 110 S.Ct. at 461 (Marshall, J., dissenting).

are accountability, deterrence and enforcement flexibility. Each is served by making law firms subject to § 2011 liability:

"[a] * * * [I]ndividual *accountability* may be heightened when an attorney understands that his carelessness or maliciousness may subject *both* himself and his firm to liability. The concern that a person take direct responsibility for each paper is not disserved by holding the law firm responsible in cases where the district court determines that both are blameworthy. * * *

"[b] * * * [D]eterrence might best be served by imposing sanctions on the signer's law firm in an attempt to encourage internal monitoring. * * *

"[c] * * * The judge who observes improper behavior and who is intimately familiar with the facts of a case should be able to fashion the penalty that most effectively deters future abuse. * * * *"[9]

## III.

### THE LAW FIRM SHOULD BE *PRIMA FACIE* LIABLE FOR ITS LAWYER'S LITIGATION–RELATED MISCONDUCT

There are three distinct remedial tracks to enforce a lawyer's accountability for practice-related misdeeds: bar discipline, legal malpractice redress and sanctions. Professional discipline for ethical breaches affects the lawyer *qua* licensee. It is always imposed on a strictly individual basis and only by this state's Supreme Court.[10] Sanctions for litigation-related misconduct, whether they possess a compensatory or punitive aspect, affect the lawyer's pocketbook. The effect of reparation for malpractice is similar to that of sanctions.

The liability I would impose upon law firms for a § 2011 violation by an associated practitioner is comparable to their exposure for a member's tortious conduct.[11] The professional corporation or partnership should be jointly and severally liable with the errant signer, unless it shows, by clear and convincing evidence, that the offending individual acted beyond the scope of his (or her) professional relationship. I would *not* hold non-culpable individual shareholders or partners *personally liable* for § 2011 sanctions.[12]

I would hence reverse the trial court's order denying the appellant's "motion for sanctions" and remand this cause for a meaningful inquiry into the signer's relationship with the law firm at the time critical to the misconduct for which sanctions stood imposed.

KAUGER, Justice, with whom OPALA, Chief Justice, and DOOLIN, Justice, join, dissenting.

Although the majority relies on *Pavelic & LeFore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), as the basis for its decision, such reliance is misplaced. *Pavelic* is factually distinguishable because it concerned whether a law firm, formed after the major portion of the litigation and the questioned action had occurred, could be sanctioned for the attorney's conduct. *Pavelic* is also distinguishable because it was decided solely under federal law.

---

9. *Pavelic & LeFlore v. Marvel Entertainment Group, supra* note 3, 493 U.S. at ——, ——, 110 S.Ct. at 461–462 (Marshall, J., dissenting).

10. *State ex rel. Okl. Bar Ass'n v. Raskin*, 642 P.2d 262, 265–266 (Okl.1982); see also *Winters v. City of Oklahoma City*, 740 P.2d 724, 729–730 (1987) (Opala, J., concurring in part and dissenting in part).

11. See *First Bank & Trust Co. v. Zagoria*, 250 Ga. 844, 302 S.E.2d 674, 676 (1983), where the court held that a lawyer holding himself out as a law firm member "will be liable not only for his own professional misdeeds but also for those of the other members of his firm," whether the firm be a partnership or a professional corporation.

12. Courts that have discussed the liability of a lawyer's professional corporation for the *tort* of the individual member generally have held the corporation liable to the extent of its assets. There is disagreement on whether lawyers who did not participate in the actionable wrong may be held personally liable. Annot. Liability of professional corporation of lawyers, or individual members thereof, for malpractice or other tort of another member, 39 A.L.R.4th 556, 557.

The meaning of federal statutes is to be determined by the federal courts, and we must follow United States Supreme Court decisions interpreting federal statutes. However, we are not bound by federal interpretations of federal statutes which are similar or identical to state statutes in our consideration of state law.[1] Because this case involves the interpretation of a state statute and because it concerns an attorney who was associated with the same professional corporation throughout the proceedings, the majority should consider this case as one of first impression.

Title 12 O.S.Supp.1987 § 2011 states that the court can impose sanctions on the "person" who signed the pleadings.[2] The general statutory definition of "person" includes "bodies politic or corporate."[3] The definition of person contained in 25 O.S. 1981 § 16 is applicable to human beings, as well as to bodies politic and corporate. Professional corporations fall within the ambit of § 2011. The logical analogy is to compare professional legal corporations with business corporations. A corporation may be liable for wrongdoing committed by its agent while the agent is engaged in the corporation's business if the act would subject the agent to liability were he/she the principal—the agent's action need neither be authorized nor ratified by the corporation.[4] The same rationale should be applicable to an attorney who is associated with a professional corporation. Because a professional legal corporation acts only through its agents/lawyers, it should be responsible for the acts of such agents while they are engaged in the corporation's business.[5]

Apparently, the majority believes that its position advances a measure of individual accountability by ensuring that someone bears direct responsibility for each filing. However, individual and firm accountability are not mutually exclusive objectives. Individual accountability may be heightened when a lawyer understands that the lawyer's actions may subject both the lawyer and the professional corporation to liability. The premise that a person take direct responsibility for each pleading is not disserved by holding the professional corporation responsible in cases where the court determines that each are blameworthy. A trial judge should be given the discretion to impose sanctions on a professional legal corporation—a juridical person—for which a signing lawyer functions as agent.[6]

Furthermore, the majority's interpretation renders § 2011 unconstitutional under Okla. Const. art. 5, § 51. It provides that "the Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State." The majority's interpretation immunizes professional legal corporations by finding that such cannot be sanctioned under § 2011 while leaving business corporations liable for similar activities.[7] I would find that a professional cor-

---

1. *Graham v. Hudgins, Thompson, Ball & Assoc.*, 540 P.2d 1161, 1164 (Okla.1975); *United States v. Home Fed. Sav. & Loan Ass'n.*, 418 P.2d 319, 325 (Okla.1966).

2. Title 12 O.S.Supp.1987 § 2011 provides in pertinent part:

   "... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

3. Title 25 O.S.1981 § 16 provides:

   "The word 'person', except when used by way of contrast, includes not only human beings, but bodies politic or corporate."

4. *Dayton Hudson Corp. v. American Mut. Liab. Ins. Co.*, 621 P.2d 1155, 1160, 16 A.L.R.4th 1, 9 (Okla.1980); *Hunt–Murry Co. v. Gibson*, 157 Okl. 112, 11 P.2d 123, 125 (1932).

5. See *Mayo Hotel Co. v. Danciger*, 143 Okl. 196, 288 P. 309, 312–13 (1930).

6. *Pavelic & LeFore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 461, 107 L.Ed.2d 438, 447 (1989) (Marshall, J., dissenting opinion).

7. This interpretation disregards the well settled rule of statutory construction that a presumption of constitutionality must be applied. If a statute is susceptible of two constructions—one which will uphold the statute, and one which

poration may be sanctioned for the improper use of pleadings by its members or agents under Oklahoma law.

will strike it down—it is this Court's duty to apply constitutional construction. *State v. Goforth,* 772 P.2d 911, 914 (Okla.1989); *Bennett v. State,* 147 Okl. 14, 294 P. 149–50 (1930).