TROTZIER v. McELROY *et al.,* trustees.

No. 11087. JULY 3, 1936. REHEARING DENIED JULY 17, 1936.

*Harold Hirsch, Marion Smith, Welborn B. Cody* and *Edward L. Cody,* for plaintiff.

*J. C. Savage, C. S. Winn,* and *Bond Almand,* for defendants.

RUSSELL, Chief Justice. Trotzier filed a petition for manda-

mus against the Trustees of the Firemen's Pension Fund of the City of Atlanta, alleging as follows: On October 1, 1924, he became a member of the Atlanta Fire Department, and continued regularly and without interruption as a member thereof until July 1, 1929. On July 1, 1929, while in the performance of his duties as a city fireman, he received an injury which incapacitated him and caused him to undergo an operation on July 29, 1929, in which his right leg was amputated three inches below the hip. By said injury he was totally prevented from performing the duties as a city fireman, but after the injury healed he was continued as a city fireman with the duty of hydrant inspector, and he performed these duties until January 1, 1933, at which time the Board of Trustees of the Firemen's Pension Fund of the City of Atlanta determined that he was totally incapacitated to perform such duties; and in accordance with the act creating the firemen's pension fund of the City of Atlanta, he was retired and placed upon the pension roll, and was paid a pension of $100 per month. This payment was continued until May 2, 1935, at which time he received a check for $75, which the trustees alleged was all that was due him, because of the fact that the act of the legislature of 1935 reduced his pension from $100 per month to $75 per month. During the time he was employed as a city fireman he paid into the pension fund a tax of one per cent. each month of his salary. He alleges that the act of the legislature approved March 28, 1935, is unconstitutional and void in so far as it undertakes to reduce his pension, because it violates art. 1, sec. 10, par. 1, of the constitution of the United States, which prohibits any State from passing any ex post facto law or law impairing the obligation of a contract; and that his relationship as described constitutes a contract which, in consideration of his services to the city, which were more or less of a dangerous nature and subject to the hazards and perils of such a vocation, and in further consideration of his having paid into said fund one per cent. of his salary during the time that he was a city fireman, could not be affected or impaired by the act of 1935, in which the legislature had endeavored to change the terms of the pension law as applied to firemen of the City of Atlanta. He prayed for mandamus to compel the trustees to perform the contract and to continue to pay him $100 per month. The defendants filed a general

demurrer to the petition, which the court sustained, and dismissed the action. The plaintiff excepted.

The question in this case is whether a fireman who has been granted a pension by the City of Atlanta, in consideration of stated services in the past as well as the payment by the fireman of a tax of one per cent. of his monthly salary, can be affected by the passage of a subsequent act of the General Assembly which reduces the amount promised him under the provisions of a previous act of the legislature. It is conceded that he would be entitled to a pension of $100 per month but for the passage of the act approved March 28, 1935 (Ga. L. 1935, p. 450), by the terms of which his previous pension was reduced to $75 per month. The question whether a pension granted by authority of a municipality upon the retirement of such municipal officers as firemen and policemen, etc., can thereafter be reduced, has been the subject of adjudication in many of our sister States, but the exact question has not heretofore been brought before this court.

Four acts of the General Assembly apply to pensions for firemen of the City of Atlanta. It is needless to refer to numerous acts of the legislature which apply to pensions for city employees in other municipalities in the State. Under the act approved August 13, 1924 (Ga. L. 1924, p. 167), any member of the fire department in a city having a population in excess of 150,000 could retire from active service as a matter of right upon being disabled in line of his duty, or could retire as a matter of right after twenty-five years active service with such department, and in that event he would be paid a stipulated pension for life. The act provided for the creation of a board of trustees, for a tax on fire-insurance premiums for the purpose of providing funds for the payment of the pensions, and for a tax of one per cent. on the salaries of firemen. In 1925 (Ga. L. 1925, p. 194), the General Assembly so amended the act of 1924 as to provide additional means of raising funds for the payment of said pension, with a provision for the payment of pensions to widows of firemen. In 1931 (Ga. L. 1931, p. 223) the act of 1924 was so amended as to provide that in the event the funds in the hands of the trustees became insufficient to pay the pensions in full, such additional funds as were necessary to pay the pensions should be paid out of the city treasury. This amendment is not involved

in the present case, since it is alleged in the petition that sufficient funds are available to make payments. The amendment of 1935 (Ga. L. 1935, p. 450), peculiarly applicable to this case, reduced the amount to be paid to firemen pensioners. Not only did it reduce the pensions of those to be placed upon the pension-roll in the future, but also reduced the pensions actually being paid pensioners who had been placed on the pension-roll before the passage of the act. It specifically declares (sec. 8) "that all persons now receiving pensions under the provision of said act approved August 13, 1924, and amendments thereto, shall henceforth receive such pensions in the amounts and only under the conditions provided for in this act," referring to a previous section reducing the pension from $100 per month to $75.

It is earnestly contended by counsel for the defendants that the municipal provision for a monthly allowance to disabled or retired firemen is a mere gratuity or bounty, and that upon the exercise of mere volition the gratuity may be reduced or even withdrawn altogether; "that the grant of a pension by a municipal corporation to its employees does not create a contractual obligation but a gratuity, in continuance of which the pensioner has no vested right, and that the pension may be changed or altered as to amount or terminated altogether." In support of this proposition counsel cite: Pennie v. Reis, 132 U. S. 464 (33 L. ed. 426); Lynch v. U. S., 292 U. S. 571 (54 Sup. Ct. 840, 78 L. ed. 1434); Clarke v. Police Board, 123 Cal. 24 (55 Pac. 576); Pecoy v. Chicago, 265 Ill. 78 (106 N. E. 435); Manning v. Spry, 121 Iowa, 191 (96 N. W. 873); Head v. Jacobs, 150 Ky. 290 (150 S. W. 349); People ex rel. Devery v. Coler, 173 N. Y. 103 (65 N. E. 956); Plunkett v. Board of Com., 113 N. J. L. 230 (173 Atl. 923); Dradge v. Jones, 37 Ohio App. 413 (174 N. E. 783); Chalk v. Darden, 47 Tex. 438; Risch v. Policemen's Pension Fund, 121 Wis. 44 (98 N. W. 954). See also Gibbs v. Minneapolis &c. Asso., 125 Minn. 174 (145 N. W. 1075), Eddy v. Morgan, 216 Ill. 437 (75 N. E. 134), and the recent case of Holton v. Tampa, 119 Fla. 556 (159 So. 292, 98 A. L. R. 501), where the facts were very similar to those of the present case. Counsel for the defendants argue strongly that "the City of Atlanta is a creature of the State, and its charter can be changed, amended, or annuled at the will of the State [citing cases], and its prime function is performance

of governmental duties on behalf of the State. It is helpless to do anything other than what power has been delegated expressly or impliedly by the State. If the legislature has imposed impossible burdens upon it which can not be supported by the taxpayers, due to changed economic conditions, the legislature can remove those burdens by subsequent legislation. If this was not true, the State, in many instances, would be unable to prevent its own creatures from becoming bankrupts. There is no obligation on the part of the city to pay a pension to an employee, and the only way a pension can be paid by a city is by legislative permission." Conceding the force of this argument, we are of the opinion that the better view of the subject is to treat the city's agreement to pay a pension as a contract based on considerations flowing from both parties, and giving the plaintiff in error a vested right which, under art. 1, sec. 10, par. 1, of the constitution of the United States (Code, § 1-134) can not be impaired. This view is supported by State ex rel. Haberlan v. Love, 89 Neb. 149 (131 N. W. 196); O'Dea v. Cook, 176 Cal. 659 (169 Pac. 366); Cobbs v. Home Ins. Co., 18 Ala. App. 206 (91 So. 627); Stevens v. Minneapolis Fire Dept. Relief Asso., 124 Minn. 381 (145 N. W. 35, 50 L. R. A. (N. S.) 1018); Lage v. Marshalltown, 212 Iowa, 53 (235 N. W. 761); Schieffelin v. Berry, 217 App. Div. 451 (216 N. Y. Supp. 367); Klench v. Board of Pension-Fund Commissioners, 79 Cal. App. 171 (249 Pac. 46); State ex rel. Gorczyca v. Minneapolis, 174 Minn. 594 (219 N. W. 924).

In Stevens v. Minneapolis Fire Department Relief Asso., supra, the Supreme Court of Minnesota said: "The contention that the pension is a mere gratuity to be granted or discontinued at the pleasure of the association is not sustained. The association was formed under authority of law, and for the purpose of affording ·in a measure indemnity and protection to firemen, who, in the performance of their duties, suffer injuries that render them incapable of continuing their duties, or performing other manual labor. The funds from which the pensions are paid are contributed by the State and the City of Minneapolis, and from dues and assessments imposed upon the members of the fire department. Every fireman in good standing and meeting the requirements of the regulations of the association is entitled as a matter of legal right to a place on the pension rolls whenever disabled to the extent

724

declared by the laws of the association. Buckendorf *v.* Minneapolis Relief Ass'n, 112 Minn. 298 (127 N. W. 1053, 1133). The creation of the pension fund was intended for the protection of disabled firemen, and of their families when death resulted from the discharge of their duties, and forms an inducement to qualified persons to become and continue members of the fire department. Each fireman contributes to the fund in the form of annual dues of $8; and this, if there be no other reason, vests in him substantial rights of which he can not be deprived except by due process of law. The constitution and by-laws of the association provide that the disabled member shall be paid the amount of money appropriate to his class, and neither the allowance nor payment is left to the arbitrary discretion of the officers of the association. The situation is wholly unlike the ordinary pension, such as that granted by the Federal government to dependent soldiers of the Civil War; for there the pension is a mere gratuity or bounty which may be taken away at any moment. Walton *v.* Cotton, 60 U. S. (19 How.) 355, 15 L. ed. 658; United States *v.* Teller, 108 U. S. 64, 2 Sup. Ct. 39, 27 L. ed. 352. In the case at bar the pension fund is created in part by the payment of dues by the members of the fire department, who may ultimately become pensioners, and the rights acquired by the firemen are analogous to those possessed by members of mutual benefit societies. 28 Cyc. 555. We therefore hold that the pension in question is not, as contended by the appellant, a mere gratuity to be granted or withheld at the whim of the association."

In Roddy *v.* Valentine, 268 N. Y. 228 (197 N. E. 260), the Court of Appeals of New York held: "Where statutory conditions for retirement existing when application is made have been met, and the award of the pension or benefit has been made, or should have been made, interest in pensioner becomes vested, and takes on attribute of a contract which in absence of statutory reservations may not legally be diminished or otherwise affected by subsequent legislation." If it be true that the right arising from the contract becomes vested on the fulfillment of the contingency provided, such as total disability, then it necessarily follows that subsequent legislation, such as the act of 1935, would impair the obligation to pay the pensioner involved in this case. This question and cases in which the same legal principle was in-

volved have been repeatedly examined in the courts of other States. In 54 A. L. R. 940, is reported the case of People ex rel. Donovan v. Retirement Board (326 Ill. 579, 158 N. E. 220), and in the annotations many cases are cited and classified. In 98 A. L. R. 501 is reported the case of State ex rel. Holton v. Tampa, 119 Fla. 556 (159 So. 292), with annotations. The editors of A. L. R. have stated in these annotations what we deem to be the proper construction and conclusions to be derived from the cases. On page 943 it is stated that "The unquestioned rule is that a pension granted by the public authorities is not a contractual obligation, but a gratuitous allowance, in the continuance of which the pensioner has no vested right; and that a pension is accordingly terminable at the will of the grantor." On page 945 the rule as to when a right to a pension becomes vested is stated as follows: "It is, however, conceded that where any particular payment under a pension has become due, the pensioner has a vested right therein. Pennie v. Reis (1889), 132 U. S. 464, 33 L. ed. 426, 10 Sup. Ct. 149; Dale v. Governor [3 Stew. (Ala.) 387]; Kavanagh v. Police Pension Fund Comrs. (1901), 134 Cal. 50, 66 Pac. 36; Macfarland v. Bieber (1909), 32 App. D. C. 513; Re Smith (1902), 130 N. C. 638, 41 S. E. 802. See also Smith v. Alkin (1890), 80 Mich. 205, 45 N. W. 136. Compare Donnelly v. United States (1881), 17 St. Cl. (Fed.) 105." Accordingly, the ruling in this case is restricted to a holding that the pension is due only where the contingency provided for has occurred before a change in the charter, ordinance, or statute under authority of which the pension was to be paid. In the present case it is undisputed that the petitioner's rights had become vested before the amendatory act of March 28, 1935 (supra); and he became entitled, as a matter of right, to a pension of $100 per month and was actually being paid. It follows that the court should have overruled the demurrer to the petition, and that it was error to dismiss the action. *Judgment reversed. All the Justices concur.*