39324. FIRST BANK & TRUST COMPANY et al. v. ZAGORIA et al.

CLARKE, Justice.

We granted certiorari in this case to address the following question: Where an attorney, who is a shareholder of a professional corporation engaged in the practice of law, issues checks to clients in connection with real estate and other loan closings, and these checks

are dishonored because withdrawals from the corporate checking account on which they were drawn left insufficient funds therein, does another attorney, who is a shareholder of the corporation but who was not personally involved in the closings or withdrawals, become personally liable for the dishonored checks? The Court of Appeals answered this question in the negative. *Zagoria v. DuBose Enterprises,* 163 Ga. App. 880 (296 SE2d 353) (1982). For reasons which follow, we reverse.

Zagoria and Stoner are the only shareholders of a professional corporation entitled Zagoria and Stoner, P. C. While acting as closing attorney Zagoria issued the checks and withdrew funds from the account so as to cause the checks to be dishonored. The question is whether Stoner shares personal liability for these acts. He contends he is protected because he is not Zagoria's partner but merely a fellow shareholder in a corporation.

The fact that a corporation is a legal entity separate and apart from its shareholders is so well recognized that it needs no elaboration. It is equally well recognized that a corporation's shareholders are generally insulated from personal liability for corporate debts. However, there is no clear authority enunciating whether such a limitation of liability exists for a professional corporation organized for the purpose of practicing the legal profession. The courts in other jurisdictions have reached varying conclusions. See Petition of Bar Association, (516 P2d 1267) (Hawaii 1973); Matter of Rhode Island Bar Association, 106 R.I. 752 (263 A2d 692) (1970); Re Florida Bar, (133 S2d 554, 4 ALR3d 375) (Fla. 1961).

We do not view this case as one in which we need to interpret the statute providing for the creation and operation of professional corporations. We rather view this case as one which calls for the exercise of this court's authority to regulate the practice of law. This court has the authority and in fact the duty to regulate the law practice and in the past two decades we have been diligent in our exercise of this duty. See *Wallace v. Wallace,* 225 Ga. 102 (166 SE2d 718) (1969); *Sams v. Olah,* 225 Ga. 497 (169 SE2d 790) (1969); *Carpenter v. State,* 250 Ga. 177 (297 SE2d 16) (1982).

The diligence of this court has been directed toward the assurance that the law practice will be a professional service and not simply a commercial enterprise. The primary distinction is that a profession is a calling which demands adherence to the public interest as the foremost obligation of the practitioner.

The professional corporation statute should be interpreted with this thought in mind. The legislature has the clear right to enact technical rules for the creation and operation of professional corporations, but it cannot constitutionally cross the gulf separating

the branches of government by imposing regulations upon the practice of law. *Carpenter v. State,* supra.

By enacting the professional corporation statute the legislature performed a useful and constitutional act. A professional corporation has numerous legitimate business purposes. By conducting a law practice through the structure of a professional corporation, its shareholders realize the advantages of more orderly business operations, greater ease in acquiring, holding and transferring property, and more continuity of its existence. Additionally, a professional corporation affords to its shareholders insulation against liability for obligations which do not arise as a result of a breach of a lawyer's obligation to his client or an act of professional malpractice. The shareholders of a professional corporation have the same insulation from liability as shareholders of other corporations with respect to obligations of a purely business and nonprofessional nature. However, the influence of the statute upon the professional corporation cannot extend to the regulation of the law practice so as to impose a limitation of liability for acts of malpractice or obligations incurred because of a breach of a duty to a client.

The professional nature of the law practice and its obligations to the public interest require that each lawyer be civilly responsibile for his professional acts. A lawyer's relationship to his client is a very special one. So also is the relationship between a lawyer and the other members of his or her firm a special one. When a client engages the services of a lawyer the client has the right to expect the fidelity of other members of the firm. It is inappropriate for the lawyer to be able to play hide-and-seek in the shadows and folds of the corporate veil and thus escape the responsibilities of professionalism.

Stoner contends Ethical Consideration 6-6 of the Rules and Regulations for the Organization and Government of the State Bar of Georgia[1] insulates a shareholder of a professional corporation from liability for the acts of his associates and that this court cannot remove the insulation in this case without offending the constitutional prohibition against retroactive laws. The validity of

---

[1] "EC 6-6: A lawyer should not seek, by contract or other means, to limit his individual liability to his client for his malpractice. A lawyer who handles the affairs of his client properly has no need to attempt to limit his liability for his professional activities and one who does not handle the affairs of his client properly should not be permitted to do so. A lawyer who is a stockholder in or is associated with a professional legal corporation may, however, limit his liability for malpractice of his associates in the corporation, but only to the extent permitted by law." Rules and Regulations for the Organization and Government of the State Bar of Georgia, 241 Ga. 643, 696.

this position is dependent upon Ethical Consideration 6-6 being interpreted as a self-executing grant of immunity. We cannot find it to be such. An ethical consideration is part of the Code of Professional Responsibility adopted by this Court and is a guideline relating to acts for which discipline may be imposed. It provides that a lawyer may not by contract or other means limit his liability to his client. It further provides that a lawyer who is a shareholder of a professional corporation may limit his liability for the malpractice of his associates in the corporation. It can be argued that this provision authorizes a limitation of liability for malpractice of associates by contract or arrangement with the clients of the professional corporation. However, it cannot successfully be argued that Ethical Consideration 6-6 is a self-executing rule which automatically insulates each shareholder of a professional corporation from liability for the malpractice of the other. We find nothing in the record of this case to indicate that any contract or arrangement for limitation of liability was ever entered into by Stoner and the clients of his professional corporation.

We hold that when a lawyer holds himself out as a member of a law firm the lawyer will be liable not only for his own professional misdeeds but also for those of the other members of his firm. We make no distinction between partnerships and professional corporations in this respect. We cannot allow a corporate veil to hang from the cornices of professional corporations which engage in the law practice.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 23, 1983 —
REHEARING DENIED APRIL 6, 1983.

*Joseph C. Parker,* for appellants.
*Jeffrey M. Smith, Richard L. Shackelford, Warren C. Fortson, Bruce H. Beerman, Teresa O. Weiner, Alan Manheim, Robert L. Goldstucker, James S. Owens, Jr.,* for appellees.