## 40765. STATE OF GEORGIA v. McMILLAN et al.

(319 SE2d 1)

HILL, Chief Justice.

This suit for declaratory judgment was brought by four judges of the superior courts of Georgia. Three of the judges — Walter C. Mc-Millan, Jr., Asa D. Kelley, Jr., and Franklin H. Pierce — are active judges; the fourth, Judge Samuel P. Burtz, is a senior (retired) judge. The defendant is the State of Georgia acting by and through the Governor, the Attorney General, and the Director of the Fiscal Division of the Department of Administrative Services sued in their official capacities as trustees of the Superior Court Judges [Emeritus] Retirement Fund and the Superior Court Judges Retirement System.[1]

Judges McMillan, Kelley and Burtz are members of the Superior Court Judges [Emeritus] Retirement Fund of Georgia, which was created in 1945 (the "1945 Act"). Ga. L. 1945, p. 362. Judge Pierce is a member of the Superior Court Judges Retirement System, which was created in 1976 (the "1976 Act"). Ga. L. 1976, p. 586. The factor determining whether superior court judges are under the 1945 Act or the 1976 Act is the date on which they first assumed the office of superior court judge. If they did so before July 1, 1968, they may retire under the 1945 Act. Membership under the 1945 Act was not mandatory, and Judges McMillan, Kelley and Burtz each chose to participate in that plan. The 1945 Act is now a closed retirement system. Ga. L. 1968, p. 259, § 9. If a superior court judge assumed office on or after July 1, 1968, he or she must participate under the 1976 Act.[2] Judge Pierce assumed office after July 1, 1968, and thus he was required to belong initially to the Trial Judges and Solicitors Retirement Fund. Under the terms of the 1976 Act, however, the memberships of superior court judges in that fund were transferred to the Superior Court Judges Retirement System. Ga. L. 1976, p. 586, § 18.

All of the petitioners have made employee contributions to their

---

[1] The defendants state in their brief that although they believe an argument could be made that they are not the proper defendants because they do not enforce the challenged provisions of the law, they chose not to raise the issue in this case "in the interest of justice and the expedition of the issues." However, because the defendants, as trustees of the retirement fund and system here involved, could suspend the retirement benefits of a retired judge who fails to abide by the terms of the applicable retirement act, they are properly named as defendants.

[2] Superior court judges taking office on or after July 1, 1968, were required to participate in the Trial Judges and Solicitors Retirement Fund, Ga. L. 1968, p. 259, § 8, until creation of the Superior Court Judges Retirement System in 1976.

respective retirement funds or systems, but only Judge Burtz has received retirement benefits as a senior judge. In addition, Judge Burtz has received per diem payments and expenses pursuant to law for his services as a superior court judge.

The 1945 Act, as since amended, has been codified in the Official Code of Georgia Annotated as § 47-8-1 et seq. The 1976 Act, as since amended, has been codified as OCGA § 47-9-1 et seq. OCGA § 47-8-61, which is derived from the 1945 Act, provides that persons who request and accept appointment as senior judges "are prohibited from practicing as attorneys, proctors, or solicitors in any court of the United States." OCGA § 47-9-60, which is derived from the 1976 Act, provides that upon retirement a superior court judge becoming a senior judge "may not practice law." It should be noted that upon leaving the bench a superior court judge is not prohibited from practicing law until he or she requests and accepts appointment as a senior judge. But a retired superior court judge is ineligible to receive retirement benefits unless and until he or she requests and receives appointment as a senior judge. Thus receipt of retirement benefits is conditioned upon appointment to the office of senior judge, which is in turn conditioned upon the forbearance of the practice of law.

The judges challenged these prohibitions, arguing that they are unconstitutional under the doctrine of separation of powers and because they violate the judges' rights to due process and equal protection. Reaching the challenge only as to separation of powers, the trial court granted the judges' motion for summary judgment, and the defendants appeal.[3] We consider the constitutional issues raised because if the trial judge's ruling is correct, it should be affirmed.

1. Neither the challenged provisions of the superior court judges retirement acts nor the similar provision in the Trial Judges and Solicitors Retirement Fund Act, OCGA § 47-10-107, has come under judicial scrutiny prior to this case.[4] We are aware of no comparable pro-

---

[3] The case was assigned to Judge Philip Etheridge of Fulton County Superior Court. Because Judge Etheridge and any other sitting superior court judge would be subject to recusal because of a possible personal interest in the outcome of the case, the parties stipulated that G. Conley Ingram, formerly a superior court judge and justice on this court now practicing law, would be acceptable to all parties. Accordingly, Judge Etheridge appointed former Justice Ingram as judge pro hac vice.

[4] See also the 1949 Act creating the District Attorneys [Emeritus] Retirement Fund of Georgia, OCGA § 47-12-21 et seq. OCGA § 47-12-81 provides that District Attorneys Emeritus are prohibited from practicing law in any cases against the State of Georgia in any of the courts of this state or of the United States and are prohibited from representing defendants in criminal cases in any of the courts of the United States or in any other court. OCGA § 47-13-70 (e), part of the District Attorneys Retirement Act of 1978, prohibits district attorneys retired under that act from engaging in the private practice of criminal law. On the other hand, retired appellate judges are not prohibited from practicing law. OCGA § 47-2-240 et seq.

We are not called upon in this case to decide whether *Ga. Dept. of Human Resources v.*

visions in other state retirement acts in Georgia; that is, the receipt of benefits by other employees enrolled in state retirement plans is not conditioned on forbearing to engage in their chosen occupation. Rather, analysis of the comparable provision of the act creating the Employees Retirement System of Georgia, OCGA § 47-2-110 (c), discloses two significant distinctions. That statute provides that a retired employee's benefits will only be suspended should he or she accept employment after retirement if the employer is one of the governmental units enumerated in OCGA § 47-2-1 (17). Furthermore, such retirement allowances are not suspended if the income from the current employment plus the retirement allowance does not exceed the compensation the retired person was receiving at retirement. OCGA § 47-2-110 (c).

The statutes in question, in contrast, effectively prohibit any meaningful employment by retired superior court judges, not just governmental employment.[5] In addition, the prohibition is unrelated to the amount of income earned; indeed, it operates to proscribe even uncompensated pro bono legal work by a retired superior court judge.

There is yet another significant distinction to be noted. A retired superior court judge who receives a retirement allowance under the 1945 or 1976 Act is not, as are most other state employees who retire at age 60 or 65, simply retired. Rather he is appointed to the office of "Senior Judge."[6] As such, he has certain duties, which now include serving under certain circumstances as a judge of the superior court. OCGA §§ 47-8-64, 47-9-60 (b). When a senior judge does so serve, he is compensated on a per diem basis ($100 per day, plus expenses) in addition to receiving retirement pay. OCGA §§ 47-8-64 (d), 47-9-60 (b). The defendants rely on this unique feature, the office of senior judge, to distinguish this case from such cases as In re the Florida Bar — Code of Judicial Conduct, 281 S2d 21 (1973), Wajert v. State Ethics Comm., 420 A2d 439 (S.Ct. Pa. 1980), and Attorney General of Maryland v. Waldron, 426 A2d 929 (Ct.App. Md. 1981), where the courts held similar prohibitions to be invalid.

The origin of the office of "Senior Judge" or "Judge Emeritus" is important to our consideration of this case.

The first retirement act cases in Georgia involved the rights of retired municipal employees, not the validity of the retirement acts.

---

*Sistrunk*, 249 Ga. 543 (291 SE2d 524) (1982), is applicable to senior judges. See *Stephenson v. Benton*, 250 Ga. 726 (2) (300 SE2d 803) (1983).

[5] We recognize that the statutes only prohibit the practice of law, but that would so obviously be the profession of choice for almost all retired judges that they have the effect of proscribing all meaningful employment.

[6] The 1945 Act, which created the first retirement fund for superior court judges, used the term "Judge of the Superior Court, Emeritus." Ga. L. 1945, p. 362. The name was changed to "Senior Judge" in the 1976 Act. Ga. L. 1976, p. 586, § 30.

Those cases found that retired employees and their widows have vested, contractual rights to receive retirement benefits, which contractual rights cannot be impaired by subsequent legislation. See *Trotzier v. McElroy*, 182 Ga. 719, 723 (186 SE 817) (1936); *Hollis v. Jones*, 184 Ga. 273 (191 SE 127) (1937); *West v. Anderson*, 187 Ga. 587, 589 (1 SE2d 671) (1939).

The first Georgia case involving the validity of a retirement act was *West v. Trotzier*, 185 Ga. 794 (196 SE 902) (1938). There the court, in summary manner, upheld the validity of the City of Atlanta firemen's pension act against various constitutional attacks. Of note, the court found that the absence of express constitutional authorization enabling the General Assembly to grant pensions did not render a pension act invalid. Id. at 798 (8).

In the next decision involving pension act validity, although upholding the act the court indicated that such acts must be carefully structured to avoid constitutional defects. *DeWitt v. Richmond County*, 192 Ga. 770 (16 SE2d 579) (1941). There the Richmond County employees' pension act, enacted in 1937, provided that employees would contribute 3% of their salaries, that permanently disabled and retired employees would be paid from the fund thus created, that while payroll deductions would start immediately, no benefits would be paid until three years after the date of passage of the act, and that " 'whenever any employee. . . [covered by the act] shall have served for twenty-five (25) years as an employee of the aforesaid county, he shall be permitted to retire from active service on his own motion, upon one half of the pay of his or her position.' " Id. at 773.

The court referred to two constitutional provisions: (1) "The General Assembly shall not by vote, resolution or order grant any donation or gratuity, in favor of any person, corporation or association," and (2) "The General Assembly shall not grant or authorize extra compensation to any public officer, agent, or contractor after the service has been rendered, or the contract entered into." (See 1983 Const., Art. III, Sec. IV, Par. VI.)

On the question of whether the Richmond County act should be construed to provide retirement benefits to those persons who worked for 25 years after the passage of the act, or whether the act included service rendered before the effective date of the act, the court construed the act not to allow credit for service rendered before passage of the act, basing its construction on the two constitutional provisions quoted above and upon the fact that, otherwise, the act would be inadequately funded. In doing so, the court said, in dicta, that "the legislature was without authority to authorize Richmond County to pay any sum to employees for services rendered before the present act." Id. at 774.

This was the state of the law as to the validity of retirement acts when, in 1945, the Superior Court Judges [Emeritus] Retirement Fund was created. The 1945 Act, Ga. L. 1945, p. 362, authorized a superior court judge to retire at age 70 after 20 years of service and receive a "salary" equal to two-thirds of his former salary. The act allowed credit for service prior to the effective date of the act. In an effort to avoid any constitutional deficiency by reason of the dicta in *DeWitt v. Richmond County*, supra, 192 Ga. at 774, the act created the "office," for life, of "Judge of the Superior Courts, Emeritus," and provided that such officers shall be ex-officio members of any judicial council created by law, shall consult with the judges of the appellate courts concerning their rules and assist them with their administrative duties, and shall consult with the Attorney General and his assistants upon legal matters. Such officials were not originally authorized to sit as superior court judges but they nevertheless were "prohibited from practicing law in the Courts of this State or any other State or Territory" and were "prohibited from practicing as attorneys, proctors, or solicitors in any Court of the United States." Ga. L. 1945, p. 362, § 5.

Thus, the office of superior court judge, emeritus, was created in 1945, with minimal duties, to enable the General Assembly to pay a "salary," Ga. L. 1945, p. 362, § 4, to judges over 70 years of age after 20 years of service, regardless of the fact that such service may have begun prior to passage of the 1945 Act. The prohibition on the practice of law was not originally enacted to prevent a retired judge from practicing law part time and simultaneously serving as a judge part time, because emeritus judges were not originally authorized to continue serving as judges. Not being motivated by ethical considerations, the prohibition on the practice of law must have originated from the possibility that the prohibition was somehow necessary to enable retired judges to be available to perform those minimal duties of consultation specified by law so as to authorize them to be paid a continuing "salary." As it turned out, the creation of the office of "judge, emeritus" was not necessary to the validity of the 1945 Act.

In 1950, on motion for rehearing in *Bender v. Anglin*, 207 Ga. 108 (60 SE2d 756) (1950), the court stated that the dicta in its 1941 decision in *DeWitt v. Richmond County*, supra, only prevented granting pensions to persons who had retired prior to passage of the pension act, and that the reason the Richmond County act had been construed to require 25 years of service under the act was because there would not have been sufficient funds to pay retirement benefits otherwise. Hence, the General Assembly's caution in 1945 in creating the office of superior court judge, emeritus, specifying consulting duties for such officers, and paying such officers "salaries," was unnecessary.

In 1951, the Governor was authorized for the first time to call

upon superior court judges, emeritus, to serve as superior court judges, with compensation set at $10 per day over and above their retirement salary. Ga. L. 1951, p. 493. In 1958, the prohibition upon "practicing law in the Courts of this State or any other State or Territory" was deleted in an amendment which did not refer to such deletion and the present law only prohibits judges under the 1945 Act from "practicing as attorneys, proctors, or solicitors in any Court of the United States." Ga. L. 1958, p. 318. The limited prohibition, "practicing as attorneys, proctors, or solicitors in any court of the United States," appears in the Official Code of 1982. OCGA § 47-8-61.

The phrase "any court of the United States" when used in our laws generally does not include the courts of this state; it refers to the federal courts. See OCGA § 47-12-81. This is particularly so in view of the original version of the prohibition in question. See Ga. L. 1945, p. 362, § 5, as enacted.

Whether the limitation of the prohibition on the practice of law became effective upon passage of the 1958 amendment, see *Osborne v. Ridge View Assoc.*, 238 Ga. 377, 378 (233 SE2d 342) (1977), we need not decide because the 1958 amendment now appears in the Official Code of Georgia Annotated, which repealed the 1945 [Emeritus] Act. OCGA § 1-1-10 (a) (2).[7]

Thus, according to existing law, those judges who have become senior judges under the 1945 Act, or who are eligible to become senior judges under that act, are not prohibited from practicing law; they are only prohibited by the act from practicing law in the federal courts.

In summary, the prohibitions on the practice of law contained in the 1945 and 1976 Acts are unique to certain judges among all state employees.[8] The 1945 Act prohibition was not enacted for ethical reasons but apparently was enacted in the mistaken belief that such prohibition was essential to the validity of the act. Moreover, the 1945 Act now prohibits only the practice of law in the federal courts. Assuming without deciding that the General Assembly is authorized to regulate the practice of law in the federal courts as part of its authority over retired state officers, no reason for doing so appears.

A person's right to work, namely the right to accept employment from private firms and individuals, is protected by our state due process clause. Const. 1983, Art. I, Sec. I, Par. I. A person's constitutional right to work does not terminate upon retirement from state employment. The right to practice law by persons authorized by law to do so

---

[7] OCGA § 1-1-10 (b) (5) applies to named superior courts and judicial circuits and is inapplicable here.

[8] The prohibitions are not applicable to appellate judges or other state officers and employees, including those who are lawyers, and they are broader than the prohibitions upon district attorneys.

has been found to be a property right. See *Weiner v. Fulton County*, 113 Ga. App. 343, 345 (148 SE2d 143) (1966). The right of a state official or employee to receive retirement benefits provided by law is a property right protected against unconstitutional intrusion. Therefore, the right of a person retired from state employment to accept employment from private firms and individuals cannot be abridged unless the law which abridges it furthers or protects some governmental interest which outweighs the intrusion upon personal liberty and property rights. There being no governmental interest furthered or protected by prohibiting senior judges retired under the 1945 Act from "practicing as attorneys, proctors, or solicitors in any court of the United States," OCGA § 47-8-61 (i.e., prohibiting them from practicing law in the federal courts), this prohibition is a violation of the due process rights of such judges and is of no force and effect.

2. We turn now to consideration of the 1976 Act. In view of our holding above, it could be argued that the prohibition upon 1976 Act judges practicing law while receiving retirement pay constitutes a denial of equal protection in view of the fact that 1945 Act judges may become senior judges and practice law. If we were to adopt such an argument, the General Assembly could never impose restrictions on retirement systems because those restricted could claim they were denied equal protection when compared to those not restricted. On the contrary, we find that date of commencement of judicial service is a rational classification and hence we find no denial of equal protection as between 1976 Act judges and 1945 Act judges.

The 1976 Act as now codified in OCGA § 47-9-1 et seq. provides generally as follows: (1) to avoid forfeiture of retirement benefits, a judge must retire at the end of the term in which the judge reaches age 70, OCGA § 47-9-70 (a); (2) maximum retirement benefits accrue upon attaining 16 years service on the bench and age 65, OCGA § 47-9-70 (b); (3) a judge may take "early retirement," at less than maximum benefits, upon attaining 10 years service on the bench and age 60, OCGA § 47-9-71. The maximum retirement authorized is two-thirds of state salary at time of retirement. OCGA § 47-9-70 (b). Early retirement benefits commence at 10/16ths of maximum benefits (10 years as opposed to 16 years), and increase annually (11/16ths, 12/16ths), but not above 75% of maximum benefits. OCGA § 47-9-71.

The state's argument that the 1976 Act's blanket prohibition on the practice of law is valid is composed of two prongs: (1) that the retirement to which senior judges under this act become entitled is not truly retirement but is compensation for holding the office of senior judge, and (2) that the office of senior judge is a public office and therefore is subject to conditions such as the prohibition on the practice of law. We disagree, insofar as the blanket prohibition is concerned, for at least two reasons.

First, a senior judge who serves as a superior court judge is paid $100 per day, plus expenses, for such service over and above his or her retirement pay. A senior judge can draw retirement pay and never again serve as a superior court judge. Therefore, the retirement benefits received by a senior judge are for retirement; the additional $100 per diem, plus expenses, is for serving as a superior court judge. No valid reason has been offered why the two benefits cannot be separated in law as they are in fact.

Second, although the defendants make a viable argument as to why the position of senior judge is a public office subject to conditions, they make no argument as to why the creation of such office (since recognized as unnecessary to the validity of a retirement act), with its blanket prohibition on the practice of law, is necessary or desirable to further or protect some governmental interest other than to urge that a pool of senior judges is needed to assist active judges in carrying out the business of the courts. In fact, the act does not require that senior judges agree to serve and hence the act does not insure the availability of such service. Some other means, if need be, must be found to assist active judges, rather than requiring senior judges to be available to hold court if and when called upon, and to abstain completely from practicing law in the meanwhile. Although the act could have prohibited the practice of law by those senior judges who desire to continue to serve as superior court judges (as Rule 8 of the Rules for Service of Senior Judges does), the act is not drawn to do only that. We therefore find that the blanket prohibition on the practice of law exceeds permissible bounds in intruding upon personal liberty and property rights. That is to say, maintaining a pool of senior judges available to assist active judges, and prohibiting them from practicing law while waiting to be called, weighs too heavily upon the pool of senior judges.

3. We now consider whether the prohibition on the practice of law, although impermissible as an absolute prohibition, may nevertheless be upheld in part. The defendants urge that, by limiting judges' activities and income upon retirement, the prohibition on the practice of law has the effect of discouraging judges from retiring; i.e., has the effect of encouraging judges to stay on the bench. Assuming that a prohibition may be relied upon for its affirmative effect, this is a valid governmental interest which justifies rational legislative intrusion. Experienced, capable jurists are an asset to the state; encouraging them to remain on the bench enhances the quality of the judiciary and decreases the costs of operating the judicial system. But the state cannot argue that the prohibition on the practice of law is intended to encourage judges over 70 to stay on the bench because the state requires them to retire at or shortly after age 70. OCGA § 47-9-70 (a).

In fact, the state's argument that the prohibition on the practice

of law is intended to encourage judges to stay on the bench is consistent with and rational only as to "early retirement," because the state also encourages judges to stay on the bench until they accrue maximum benefits by attaining 16 years service and age 65. OCGA § 47-9-70 (b), supra. By providing maximum benefits for those judges who attain 16 years service and age 65, the state encourages retirement at that time.[9] Simply put, the state cannot have it both ways. It cannot at one and the same time encourage retirement after 16 years service at age 65 by paying maximum benefits and also justify a serious intrusion on personal liberty on the basis that the state has an interest in deterring retirement at that time. Thus we conclude that OCGA § 47-9-60 is unconstitutional to the extent that it prohibits senior judges who have served 16 years on the bench and have reached the age of 65 from practicing law. That prohibition also is unconstitutional to the extent it prohibits the practice of law by those senior judges who are required by law to retire at age 70 or forfeit their retirement benefits, OCGA § 47-9-70 (a), supra. On the other hand, we find the prohibition on the practice of law upon other senior judges taking early retirement furthers a valid governmental interest by encouraging judges to remain on the bench and hence is not unconstitutional.

4. We find no denial of equal protection between superior court judges and appellate judges or other state employees under state retirement systems, as there is a rational basis for classifying trial judges separately. And, in view of the above conclusions and holdings, we find no violation of separation of powers because the creation and funding of a retirement system is a legislative matter and the reasonable prohibition remaining does not violate the separation of powers doctrine.

5. Finally, we reject the defendants' contention that the judges have waived their right to challenge these provisions by voluntarily participating in these retirement plans. Participation under the 1945 Act is, it is argued, "voluntary." OCGA § 47-8-20 (b). While the defendants recognize that participation under the 1976 Act is compulsory while a judge is serving as judge, they note that he may withdraw his own contributions with interest upon retirement and forego any retirement benefits. OCGA § 47-9-75. And under either act, a retired judge may forego collection of benefits until he chooses to cease the practice of law.

---

[9] It could be argued that a judge might be encouraged to stay on the bench after age 65 in anticipation that the state salary for superior court judges may be increased before he or she reaches age 70, thereby increasing retirement benefits under OCGA § 47-9-70 (b), but the history of salary increases for superior court judges shows that such encouragement is problematic. Moreover, judges are now required to continue paying 7 ½ % of their salary into the retirement system after attaining 16 years service, OCGA § 47-9-70 (b), which confirms that the state encourages judges to retire once they become eligible for maximum benefits.

None of this, however, renders participation under the acts voluntary so as to effect a waiver of the right to challenge the post-retirement prohibitions on the practice of law on constitutional grounds. Faced with a comparable problem, the court in McMann v. United Air Lines, 542 F2d 217, 219 n. 1 (4th Cir. 1976), stated: "We attach no significance to the fact that McMann could have chosen not to join the plan. Realistically, an employee's decision whether or not to forego lucrative benefits, funded in part by employer contributions he would not otherwise receive, is not 'voluntary' in the sense we think it would have to be in order to find a waiver. . . ." On certiorari, the United States Supreme Court did not discuss waiver but instead reached the merits and reversed. United Air Lines, v. McMann, 434 U. S. 192 (98 SC 444, 54 LE2d 402) (1977).

Likewise, we decline to find a waiver. These judges, by voluntarily becoming judges, cannot be said to have waived the right to assert their constitutional rights upon retirement. In *Franklin v. Mayor &c. of Savannah,* 199 Ga. 426 (34 SE2d 506) (1945), cited by the defendants as being directly on point, the court considered plaintiff's equal protection claim on its merits in Division 2 of the opinion. The discussion in Division 1 dealt not with waiver but with whether the plaintiff acquired any vested right in the first instance. Other cases cited by the defendants are also distinguishable.

*All the Justices concur in Divisions 1, 2 and 5 of the foregoing opinion. Marshall, P. J., also concurs in Divisions 3 and 4.*

SMITH, Justice.

I concur in the result reached in Divisions 1, 2, and 5 of Chief Justice Hill's opinion, but write separately in order to state the majority's views concerning the prohibition on the practice of law by retired superior court judges found at OCGA § 47-9-60. Five Justices of this court believe that, regardless of its due process implications, the statute is an unconstitutional infringement on this court's inherent and exclusive power to regulate the practice of law in this state. We therefore hold, as did the court below, that the prohibition violates the doctrine of separation of powers and is invalid, both as to early retirees and as to those trial judges who have accrued full retirement benefits.

"This court has the authority and in fact the duty to regulate the law practice and in the past two decades we have been diligent in our exercise of this duty." *First Bank &c. Co. v. Zagoria,* 250 Ga. 844, 845 (302 SE2d 674) (1983). "That the courts possess certain inherent powers, is a proposition which, so far as we know, has never been questioned. [Cits.] This means, then, when the constitution declares that the legislative, judicial, and executive powers shall forever remain separate and distinct [cit.], it thereby invests those officials

charged with the duty of administering justice according to law with all necessary authority to efficiently and completely discharge those duties the performance of which is by the constitution committed to the judiciary, and to maintain the dignity and independence of the courts." *Lovett v. Sandersville R. Co.*, 199 Ga. 238, 239 (33 SE2d 905) (1945). "[T]he judiciary [can] not be circumscribed or restricted in the performance of its duties related to its inherent power to regulate the practice of law. It is the duty of this court to reject legislative attempts to interfere with the exercise of its judicial powers." *Sams v. Olah*, 225 Ga. 497, 501 (169 SE2d 790) (1969). Clearly the statute at issue here constitutes an attempt by the General Assembly to regulate the legal profession. It provides that, in order to receive retirement benefits, retiring superior court judges must "request and accept" appointment to senior judge status. Once appointed, a senior judge "may not practice law," OCGA § 47-9-60. By depriving a person of his right to practice law unless he meets certain legislatively-prescribed conditions, the statute regulates, and indeed prohibits, the practice of law by superior court judges. Accord Attorney General of Md. v. Waldron, 426 A2d 929, 932 (Md. 1981).

This court has previously recognized that the legislature may legitimately pass an act recommending the creation of a state bar, *Wallace v. Wallace*, 225 Ga. 102 (166 SE2d 718) (1969); *Sams v. Olah*, supra, or punish as a crime the unauthorized practice of law, *Huber v. State*, 234 Ga. 357 (216 SE2d 73) (1975), but we have steadfastly maintained that "[m]atters relating to the practice of law, including the admission of practitioners, their discipline, suspension, and removal, are within the inherent and exclusive power of the Supreme Court of Georgia." *Carpenter v. State*, 250 Ga. 177 (297 SE2d 16) (1982). Further evidence of this court's exercise of control over the law practice of senior judges can be found at paragraph S-8 of the Rules for Service of Senior Judges, as approved by this court and effective September 1, 1983: "In view of the foregoing limitations upon service and compensation of senior judges, senior judges may elect to declare themselves ineligible to serve as judges and to engage in the private practice of law if and when authorized by law. Such election shall be made in writing delivered to the Supreme Court. Senior judges electing to practice law shall be entitled to draw their earned retirement pay but shall not be entitled to additional compensation for serving as judges. A senior judge who has elected to practice law shall not thereafter be eligible to serve as a judge except upon petition showing good cause to and with the approval of the Supreme Court. Having once been reinstated as eligible to serve as judge by the Supreme Court, no second such petition shall be granted by the Court.

"No judge shall call upon any senior judge to serve who is exer-

cising the right to practice law and no senior judge who is exercising the right to practice law shall agree to serve as a judge."

In light of our history of exclusive regulation of the practice of law and, specifically, regulation of the law practice of senior judges, any attempt to legislate in this area violates the doctrine of separation of powers and is void. See 1983 Ga. Const., Art. I, Sec. II, Par. III. Other states have so held under similar circumstances. See In re The Florida Bar, 281 S2d 21 (Fla. 1973); Archer v. Ogden, 600 P2d 1223 (Okl. 1979); Attorney Gen. of Md. v. Waldron, 426 A2d 929, supra; State v. Barlow, 131 Neb. 294 (268 NW 95) (1936); Wajert v. State Ethics Comm., 491 Pa. 255 (420 A2d 439) (1980); Matter of Washington State Bar Assn., 86 Wash.2d 624 (548 P2d 310) (1976).

We conclude that the prohibition on the practice of law by retired superior court judges is void, regardless of the length of service of those judges or their accrued benefits. In his opinion, Chief Justice Hill distinguishes between "early" and "full" retirees, holding that "early" retirees may constitutionally be prohibited from practicing law; but no principled reason for the distinction appears, either on the face of the statute or in his opinion. If, as the Chief Justice asserts, "maintaining a pool of senior judges available to assist active judges" is not a sufficient reason to justify intrusion on the personal liberty and property rights of those judges who retire with full benefits at age 65 or older, how can the same state interest justify an identical intrusion on the rights of those under 65, who have accrued fewer retirement benefits and, presumably, are more needful of returning to the active practice of law?

The trial court correctly ruled that the broad prohibition of the statute unfairly and unconstitutionally deprives *all* retired superior court judges of their right to earn a livelihood by practicing law.

*Judgment affirmed. All the Justices concur in Justice Smith's opinion, except Hill, C. J., and Marshall, P. J., who dissent for the reasons stated in Division 4 of the opinion by Hill, C. J.*

DECIDED JULY 6, 1984.

*Michael J. Bowers, Attorney General, Carl C. Jones, Senior Assistant Attorney General*, for appellant.

*Spivey, Carlton & Edenfield, J. Franklin Edenfield*, for appellees.