A95A0494. PAGE v. HSI FINANCIAL SERVICES, INC.
A95A0495. HENDERSON et al. v. HSI FINANCIAL SERVICES, INC.
A95A0496. PAGE, SEVY & HENDERSON, P.C. v. HSI FINANCIAL SERVICES, INC.
(461 SE2d 239)

BEASLEY, Chief Judge.

In 1985, Page, an attorney, and HSI Financial Services, Inc., (HSI), a collection agency owned by member hospitals, entered into a contract for legal services under which HSI turned over delinquent hospital accounts to Page for collection. The contract required Page to deposit payments received into his general trust account and remit all collected funds, less attorney fees in the amount of 30 percent of all payments, to HSI on a monthly basis.

In 1988, the law firm of Page, Sevy & Henderson, P.C. (PSH), was formed. HSI continued to refer delinquent accounts to PSH, acting by and through Page.

PSH and Page failed to pay remittances in the total amount of $373,841.21 to HSI for the months January through March 1990. As a result, PSH, Page, and HSI entered into an Agreement of Resolution in May 1990, and PSH executed a promissory note in favor of HSI.

In the agreement, the parties acknowledged that PSH and HSI had been doing business with each other, with PSH functioning as collection attorneys for HSI, and that the ordinary course of business had been for PSH to remit any funds owing to HSI on approximately a 90-day basis (rather than on a monthly basis as required by the 1985 contract). PSH agreed to pay the January statement ($121,931.16) and February statement ($100,182.31) to HSI in accordance with the promissory note; to pay the March statement ($151,727.74) on or before June 1, 1990; and to pay all other statements within 30 days and thus remain current in its obligations to HSI.

The promissory note was in the principal sum of $222,113.47, with interest of 18 percent per annum on the unpaid balance. Principal and interest were payable in 12 equal monthly installments of $20,363.36, with the first payment due June 1, 1990. If PSH failed to

pay any installment when due, or to comply with any terms or requirements of the Agreement of Resolution, HSI was given the right to accelerate the maturity of unpaid principal and accrued interest. PSH was entitled to ten days' notice with right to cure the default. The note also gave HSI the right to collect attorney fees in an amount equal to 15 percent of principal and interest should the note be collected by law or through an attorney. Page, Sevy, and Henderson personally guaranteed the note, and Page agreed to assign benefits of a $1,000,000 life insurance policy to HSI to secure PSH's obligation on the note.

PSH ceased making payments to HSI on its accounts following its remittance of amounts owed from the September 1990 collections, and it ceased making payments on the note after paying the December 1990 installment. Sevy resigned from PSH in November 1990. Collections from October 1990 through January 1991 totaled $687,042.73. Despite HSI's letter dated January 30, 1991, demanding immediate payment of all funds in possession of PSH and Page which were the property of HSI, they failed to account for or pay the funds.

On February 4, 1991, HSI filed the present complaint against PSH and against Page, Sevy, and Henderson in their individual capacities. In Count 1 of the complaint, HSI stated that Page and PSH were insolvent and asked that they be enjoined from receiving, obtaining, or converting any further payments from debtors on collection cases referred by HSI and from transferring, selling, or otherwise disposing of any assets without court order. In Count 2, HSI requested the appointment of a receiver for PSH. The remaining counts advanced various theories in support of the right to recover $687,042.73 in unremitted monthly collections, unpaid principal and interest due under the promissory note, an interest penalty, and attorney fees.

The day after the complaint was filed, the superior court appointed a receiver for PSH and issued a temporary restraining order enjoining defendants from transferring any of the assets of PSH. Shortly thereafter, Page, in a petition filed with the State Disciplinary Board, admitted that he had received approximately $510,308.85 in payments on HSI accounts from October through December 1990; that he failed to remit the funds owed to HSI; and that he was unable to account for the whereabouts of the funds. He voluntarily surrendered his license to practice law in this state.

HSI later moved for partial summary judgment as to Counts 3 and 5 through 8 of the complaint. PSH filed a "counter-motion" for summary judgment and motion to dismiss. In a lengthy order, the court granted HSI's motion and denied those of PSH. In Case No. A95A0494, Page appeals. In Case No. A95A0495, Henderson and Sevy appeal. In Case No. A95A0496, PSH appeals.

1. Page contends that the court erred in granting summary judgment on Count 3, in which HSI requested issuance of a money rule against Page for the $687,042.73 in unpaid monthly collections.

"Under [OCGA § 15-19-16] '(w)here attorneys retain in their hands the money of their clients after it has been demanded, they are liable to rule. . . .' The 'rule' referred to in [OCGA § 15-19-16] is found in [OCGA § 15-13-3 (a)] which provides that if an attorney fails to pay to the proper person money he may have in his hands collected by virtue of his office, then after written demand and upon application and subsequent neglect or refusal to pay, the attorney shall be compelled to pay at the rate of 20 percent per annum upon such sum from the date of demand (in addition to paying over the wrongfully withheld sum). This procedure is a 'summary remedy to enforce the paying over of money belonging to a client, wrongfully withheld by his attorney, (and) is penal in nature. . . .' [Cit.] However, this otherwise summary remedy is not available where the attorney answers the complaint in writing and effectively denies its allegations. [Cits.]" *West v. Haupt*, 163 Ga. App. 907, 909 (1) (296 SE2d 723) (1982).

Page argues, among other things, that if the money rule applies, it must apply to PSH rather than to him, because the evidence shows that after PSH was formed HSI began to look to PSH as an entity rather than to him personally for payment of funds. To the contrary, the evidence unequivocally establishes that after PSH was formed, HSI looked to both PSH and Page. Both were parties to the Agreement of Resolution, and Page personally guaranteed the promissory note between PSH and HSI.

The admissions made by Page to the State Disciplinary Board establish that the HSI funds were "in his hands" and that he failed to either remit the funds to HSI or account for their whereabouts after HSI made a demand for them on PSH and Page prior to the filing of the complaint. Although Page answered the complaint, he did not "effectively" deny its allegations. He has asserted no facts which could be found to constitute "good cause" for not remitting the funds to HSI. HSI was thus entitled to a money rule against Page and to the 20 percent interest penalty. See *Nations v. Winter*, 165 Ga. App. 890, 892 (4) (303 SE2d 64) (1983).

2. Page contends that the court erred in ruling that HSI is entitled to a recovery under the money rule for the full amount of collected funds without any reduction for attorney fees.

The superior court correctly rejected this argument on the authority of *Gray v. Conyers*, 70 Ga. 349, 355-356 (5) (1883): "Fees to collect money by counsel are hardly payable, if the money be not paid over when collected and demanded, without legal reasons therefor. . . . It will do the client little good to collect and not pay over. To force him to litigate to get the money from his lawyers is to make

him incur fees to other lawyers, and he ought not to pay both."

3. Page and PSH contend that the court erred in concluding that they are liable to HSI under the breach of contract theory in Count 6.

From the outset, Page never remitted collected funds to HSI on a monthly basis as required by the 1985 contract. Page and PSH argue that HSI thereby acquiesced in a departure from the terms of the original contract and that this constituted a waiver of its right to now enforce those terms. However, HSI's entry into the 1990 Agreement of Resolution shows that it did not intend to waive the requirement that collected funds be paid to it within the time frame called for by the 1985 contract. *Chapman v. Nation*, 193 Ga. App. 632, 634 (1) (388 SE2d 744) (1989). Nor could HSI's acquiescence in late payments under the 1985 contract have constituted a breach of its duty to mitigate the damages sought, as suggested by PSH, Sevy, and Henderson.

PSH argues that it cannot be held liable to HSI for breach of contract because it was not a party to the 1985 contract between HSI and Page. That is of little consequence because it was a party to the 1990 Agreement of Resolution.

4. Page correctly contends that the court erroneously held that HSI is entitled to 100 percent, rather than 70 percent, of amounts collected under its breach of contract count. That is what the 1985 contract provides, so that damages for breach of contract constitute only 70 percent. Whether HSI is entitled to recover attorney fees for breach of contract is governed by OCGA § 13-6-11, which is the next issue.

5. Page contends that the court erred in holding that HSI is entitled to an award of attorney fees under OCGA § 13-6-11, based upon bad faith by Page and PSH in performance of the contract with HSI.

OCGA § 13-6-11 states, "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

Although the trial court may grant attorney fees or litigation expenses under OCGA § 13-6-11 where it sits as the trier of fact, *Derrickson v. Kristal*, 148 Ga. App. 320, 321 (3) (251 SE2d 170) (1978), it is not a trier of fact on a motion for summary judgment. It has been uniformly held that the question is for the jury. E.g., *Spring Lake Property Owners Assn. v. Peacock*, 260 Ga. 80, 81 (390 SE2d 31) (1990) and cit. On the other hand, a court must grant a defendant's motion for summary judgment on a claim based on OCGA § 13-6-11 if there is no evidence of bad faith or stubborn litigiousness. *Carter v. Allstate Ins. Co.*, 197 Ga. App. 738, 743 (4) (399 SE2d 500) (1990). This case does not involve such a motion.

Moreover, attorney fees are not awardable under OCGA § 13-6-11 as a matter of law under the circumstances of this case, so it will not be a jury question. HSI is being compensated for its attorney fees in recovering the unpaid monthly collections through counsel's forfeiture of the 30 percent attorney fee under the money rule, and HSI is also being compensated for its attorney fees in bringing suit on the promissory note through the provision in the note for the collection of attorney fees in the amount of 15 percent of principal and interest. HSI does not argue, and it does not appear, that the attorney fees actually incurred by it exceed these amounts.

6. Defendants contend that the court erred in awarding judgment to HSI on the promissory note on Count 7.

Under OCGA § 13-1-11 (a) (3), obligations to pay attorney fees upon any note shall be valid and enforceable if, among other things, the holder shall notify in writing the maker or party sought to be held liable that the provisions relative to payment of attorney fees in addition to the principal and interest shall be enforced and that such maker or party has ten days from the receipt of such notice to pay the principal and interest without the attorney fees. Defendants were given such notice in the complaint.

Page, Sevy, and Henderson argue that as a result of the grant of the temporary restraining order and the receivership appointment, Page and PSH were deprived of their right to have ten days to cure the default. The argument fails. If PSH had sufficient funds to pay the sums due under the promissory note or other monthly collections, it could have applied to the court or receiver for the transfer of such funds from PSH to HSI. This was not done.

Page, Sevy, and Henderson also argue that laches bars HSI's right to relief under the promissory note, because it did not act immediately when PSH first failed to remit funds pursuant to the Agreement of Resolution. PSH argues that promissory estoppel precludes HSI from enforcing the promissory note because it acted too quickly on PSH's default. Both arguments are without merit. A plea of laches cannot be sustained unless facts are alleged to show prejudice to the defendant or that the ascertainment of the truth is made more difficult by delay on the part of plaintiff to immediately seek relief. *Palmer v. Tomlinson*, 217 Ga. 399 (2) (122 SE2d 578) (1961). No facts have been produced to show either result. PSH's promissory estoppel argument is based on the fact that it informed HSI that it was not generating sufficient cash flow to make the monthly installment payments on the note before it was executed, and HSI stated that " 'if there is a problem in the future, let's address it at that time.' " This did not constitute any sort of promise by HSI not to enforce the promissory note after PSH altogether stopped making monthly installment payments and remitting sums owed on current monthly col-

lections.

The court did err in awarding HSI $97,390.73 in unpaid principal and $10,614.38 in unpaid interest on the promissory note (total $108,005.11). The monthly payments on the note were $20,363.36, the last payment made was in December 1990, and the final payment due was in May 1991. Consequently, HSI was entitled to an award of the five monthly payments from January through May 1991 in the cumulative total sum of $101,816.80. HSI has provided no basis for any alternative calculation.

7. Page and PSH contend that the court erred in awarding judgment on Count 8 for professional malpractice.

Page's admissions to the State Disciplinary Board establish his violations of Standards 63 and 65 (A) of State Bar Rule 4-102 by failing to account to HSI for funds of HSI coming into Page's possession and that he failed to remit HSI's funds to it. This establishes both a breach of duty by Page in his capacity as a lawyer to HSI as his client and a loss to HSI proximately caused by the breach. Compare *Tante v. Herring*, 264 Ga. 694, 695 (1) (453 SE2d 686) (1994) (no evidence that attorney's tortious conduct had any effect on his performance of legal services under his agreement with clients); *Hendricks v. Davis*, 196 Ga. App. 286, 287 (2) (395 SE2d 632) (1990) (no evidence that alleged malpractice proximately caused client's loss; violation of the Code of Professional Responsibility alone cannot support an action seeking money damages).

We reject Page's argument that HSI is chargeable with contributory negligence, in that it monitored PSH's collection receipts through a computer network to which both HSI and PSH were linked. HSI's professional malpractice claim against Page is grounded upon wilful breach of duty and not negligence.

PSH disputes the existence of an attorney-client relationship between it and HSI, but in the Agreement of Resolution, PSH acknowledged that it was being employed to render legal services to HSI. See generally *Roberts v. Langdale*, 185 Ga. App. 122, 123 (1) (363 SE2d 591) (1987).

8. Sevy and Henderson contend that the court erred in granting summary judgment to HSI on Count 5, in which HSI sought to hold Sevy and Henderson jointly and severally liable for the professional acts and torts of Page by virtue of their practice of law with him.

The court granted summary judgment to HSI on this count under *First Bank & Trust Co. v. Zagoria*, 250 Ga. 844, 847 (302 SE2d 674) (1983). In *Zagoria*, the court, making no distinction between partnerships and professional corporations, held that when a lawyer holds himself out as a member of a law firm, the lawyer will be liable not only for his own professional misdeeds but also for those of the other members of his firm. The evidence without conflict shows that

Sevy and Henderson were minority shareholders employed by PSH for a salary without any right to receive a share of the profits, that they did not have control over any PSH trust accounts, and that they did not have any significant contacts or dealings with HSI. It is also uncontroverted that they held themselves out as members of the law firm and, as a matter of law, Page's failure to remit the subject funds to HSI constituted a professional misdeed. For the latter reasons, *Zagoria* is applicable, and Sevy and Henderson are liable.

Sevy and Henderson's challenge to the constitutionality of the *Zagoria* decision is beyond our jurisdiction.

9. PSH contends that the court erred in granting HSI's motion for summary judgment as to Counts 3 and 5 because the receivership status of PSH renders the corporation a non-entity.

"The general rule is that the appointment of a receiver does not abate a pending suit against an insolvent [debtor]. [Cits.]" *Shaw v. Caldwell*, 229 Ga. 87, 91-92 (2) (189 SE2d 684) (1972); compare *Short v. State of Ga.*, 235 Ga. 394 (219 SE2d 728) (1975). PSH has asserted no facts which take this case outside the general rule.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Ruffin, J., concur.*

DECIDED JULY 11, 1995 —
RECONSIDERATION DENIED JULY 31, 1995 — 

*Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair, R. Michael Ethridge*, for Page.

*Cauthorn & Phillips, Thomas E. Cauthorn III, B. Wayne Phillips*, for HCI Financial Services, Inc.

*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Stacey L. Ferris-Smith*, for Page, Sevy & Henderson, P.C.

*Smith, Gambrell & Russell, David A. Handley, Margaret M. Leveille*, for Henderson.